THE NATIONAL SHOE AND LEATHER BANK of the City of New York, Respondent, *v.* AMELIA F. BAKER, Appellant, Impleaded with ROBERT B. MERRITT.

1. DECEASED INSOLVENT DEBTOR — CREDITOR'S ACTION UNDER CHAP. 740, LAWS OF 1894 — COMPULSORY REFERENCE. When, in an action brought under the statute (Laws of 1894, chap. 740), by an alleged creditor of a deceased insolvent, to set aside as fraudulent a conveyance made by the decedent, the alleged debt is denied, the issue as to its existence is immediate and direct, not collateral or incidental; and, hence, when no difficult question of law is involved, a compulsory reference, on the ground that the examination of a long account will be required (Code Civ. Pro. § 1013) is properly ordered, when it appears that the establishment of the debt requires the examination of many items of debits and credits.

2. WAIVER OF TORT — DEBT — ACCOUNT. The tort involved in fraudulent overdrafts, alleged to have been made by a customer of a bank through collusion with one of its employees, may be waived by treating the overdrafts as a debt for money had and received; and such debt may, in case of the death of the customer insolvent, form the basis for an action by the bank under the statute (Laws of 1894, chap. 740), to set aside as fraudulent conveyances made by him, in which the debt may be substantiated by an account between the parties, consisting of debits of checks cashed and credits of deposits and discounts.

*Camp* v. *Ingersoll* (86 N. Y. 433), distinguished.

Reported below, 90 Hun, 277.

(Argued February 17, 1896; decided February 25, 1896.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made October 7, 1895, which affirmed an order of Special Term directing a compulsory reference.

The nature of the action and the facts, so far as material, are stated in the opinion.

*B. F. Tracy* for appellant.    A compulsory reference of an action can be ordered only when the accounts to be examined are the direct and immediate object of the action.  (*Read* v. *Lozin,* 31 Hun, 286 ; 96 N. Y. 647 ; *Claflin* v. *Drake,* 38 Hun, 144 ; *Camp* v. *Ingersoll,* 86 N. Y. 433 ; *Bushnell* v. *Eastman,* 2 Abb. Pr. [N. S.] 411 ; *Morrison* v. *Van Benthuysen,* 103 N. Y. 675 ; *Dederick* v. *Richley,* 19 Wend. 108 ; *Silmser* v. *Redfield,* 19 Wend. 21 ; *Kain* v. *Delano,* 11 Abb. [N. S.] 29 ; *Van Rensselaer* v. *Jewett,* 6 Hill, 373 ; *Thomas* v. *Reab,* 6 Wend. 503 ; *Todd* v. *Hobson,* 3 Johns. Cas. 517 ; *Magown* v. *Sinclair,* 5 Daly, 63 ; Code Civ. Pro. § 1013 ; *Morrison* v. *Horrocks,* 40 Hun, 428 ; *Untermyer* v. *Beinhauer,* 105 N. Y. 524.)    Actions sounding in tort are not referable.  (*Townsend* v. *Hendricks,* 40 How. Pr. 143 ; *Untermyer* v. *Beinhauer,* 105 N. Y. 521 ; *Johnson* v. *A. A. R. R. Co.,* 139 N. Y. 449 ; *Morrison* v. *Horrocks,* 40 Hun, 428 ; *Evans* v. *Kalbfleisch,* 4 J. & S. 450 ; *E. S. T. & T. Co.* v. *Bickford,* 142 N. Y. 224.)

*James L. Bishop* for respondent.    Right of trial by jury does not exist in this case.    The action is undoubtedly triable by the court without a jury.    In such a case the power of the court to order a reference where the examination of a long account is involved is expressly conferred by the Code of Civil Procedure.  (Code Civ. Pro. § 1013 ; *Camp* v. *Ingersoll,* 86 N. Y. 433 ; *Thayer* v. *McNaughton,* 117 N. Y. 111 ; *Rowland* v. *Rowland,* 141 N. Y. 485 ; *E. S. T. & T. Co.* v. *Bickford,* 142 N. Y. 224.)

Vann, J.    This action is based on chapter 314 of the Laws of 1858, as amended by chapter 487 of the Laws of 1889, and

chapter 740 of the Laws of 1894. The statute in its present form was in force when this action was commenced. It authorizes any creditor of a deceased insolvent debtor, having a claim against the estate of such decedent exceeding the sum of $100, to maintain any action necessary to set aside conveyances made in fraud of the rights of creditors of the deceased debtor, without obtaining a judgment upon such claim, but provides that the debt, "if disputed, may be proved and established upon the trial of such action." A sale of the premises or property is authorized when any conveyance or transfer of the same is set aside, and it is provided that the proceeds thereof may "be brought into court, or paid into the proper Surrogate's Court to be administered according to law."

The plaintiff alleges in its complaint, that prior to January 1st, 1891, "Frederick Baker became and was indebted to the plaintiff in the sum of at least $100,000, moneys received by him belonging to said plaintiff over and above the amount of any credits and set-offs to which he was entitled, and which moneys the said Baker, acting in collusion with one Samuel C. Seeley, a bookkeeper in the employ of the plaintiff, had fraudulently obtained from the plaintiff and appropriated to his own use, and continued so indebted during all the times hereinafter mentioned." It is also alleged that the said Baker died November 24th, 1894, insolvent, and that during his lifetime he had transferred to his wife, the defendant, Amelia F. Baker, three parcels of land with intent to hinder, delay and defraud his creditors. The complaint further states that the action is brought for the benefit of the plaintiff and other creditors, if any, interested in the estate and property of said deceased. The demand for judgment is that the conveyances be set aside, a receiver appointed, etc.

The defendant Merritt made no defense, but Mrs. Baker served an answer which admits the corporate character of the plaintiff and the death of Frederick Baker, but denies substantially all the other allegations of the complaint. The existence of the debt is specifically denied, and the fraudulent

transfers are put at issue by a denial of any knowledge or information sufficient to form a belief.

A bill of particulars was served, upon the demand of the defendant who answered, consisting of over 900 items of charges for " amounts paid out on checks of Frederick Baker," commencing June 22d, 1885, and ending October 27th, 1890, amounting in all to $164,701.15. The credit side of the account consists of about 100 items, described as discounts and deposits, commencing June 22d, 1885, and ending August 29th, 1890, amounting in the aggregate to $45,205.20.

Upon these facts a compulsory reference of all the issues in the action was made by the court at Special Term. Mrs. Baker opposed the motion and appealed from the order, which was affirmed by the General Term, and from the order of affirmance an appeal was taken to this court.

This is an equity action in the nature of a creditor's bill, to set aside fraudulent conveyances made by a deceased and insolvent debtor. The remedy given by the statute is not a new one, but is the extension of an old and familiar remedy by relieving the creditor of the necessity of recovering judgment and issuing execution, when that would be impossible owing to the death of the debtor. This does not change the character of the action, or its object, which is to remove an obstacle to the collection of a debt, to be established by common-law proof, instead of by the recovery of judgment and the return of execution unsatisfied. (2 R. S. [1st ed.] 173, § 38; Code Civ. Proc. § 1871.) If the plaintiff had recovered judgment upon its claim against Frederick Baker prior to his death, and execution thereon had been returned unsatisfied, wholly or in part, it could have maintained an action to set aside said conveyances as fraudulent without the aid of the statute, which does not create a new cause of action, but changes a rule of evidence by allowing the creditor to establish his debt by oral testimony, instead of by the record of a judgment.

There are three elements to the cause of action : (1) A conveyance or transfer in fraud of creditors by an insolvent person. (2) The death of that person, and (3) the existence

of a debt in favor of the plaintiff against the deceased insolvent, exceeding the sum of $100. All these elements, except the second, exist as issues in this action under the pleadings. The debt, as alleged, is founded on an implied contract and is in the nature of *indebitatus assumpsit.* The alleged debtor, having received moneys belonging to the plaintiff, and having appropriated them to his own use, is presumed to have promised to repay them, whether he came by them honestly or otherwise. In this respect, as well as in others, the case is quite like that of *People* v. *Wood* (121 N. Y. 522), where the complaint alleged that the defendant, a county clerk, had presented bills for services claimed to have been rendered to the county of Herkimer, which, although illegal and fraudulent, were audited and paid, without authority in the board of supervisors to audit or allow the same, and that thereby the defendant became justly indebted to the county in the amount thus illegally obtained. Although the action was at law and ordinarily triable before a jury, an order referring all the issues was sustained upon the ground that the trial would require the examination of a long account. The court held that so far as the power to refer was concerned, there was no difference between express and implied contracts; that the facts alleged constituted a good cause of action in *assumpsit* for money had and received for the use and benefit of its owner; and that "such actions had been designated from time immemorial in the law as actions *ex contractu.*"

We think that the items contained in the bill of particulars in this case constituted an account between the parties within the meaning of that term as used in section 1013 of the Code of Civil Procedure. As to the items of credit, they were doubtless placed upon the books of the bank as each discount was obtained or sum deposited, but as to the charges they were probably made up after discovery of the fraud. This, however, does not change the nature of the account, for the plaintiff had the right to charge the defendant with each item fraudulently procured, upon the ground of an implied promise to pay it at the date when the money was obtained.

74

The account consists of dealings between the parties thereto by mutual consent as to the credits, but with no original consent on the part of the plaintiff as to the debits. The form of the action, however, waives the wrong done, and ratifies each transaction by alleging it as an item of indebtedness, and, in legal effect, amounts to an original authority-from the bank to Baker to draw the various sums of money.

The account does not present a collateral or subsidiary issue, as it is an essential part of the cause of action, being made so by the statute, and a failure to establish the debt would result in a dismissal of the complaint. What the statute authorizes to be tried and requires to be established, and the parties by their pleadings put in issue cannot be justly termed collateral or incidental. The fraudulent transfer itself is no more vital than the existence of the debt, which was a direct issue and not, as in *Camp* v. *Ingersoll* (86 N. Y. 433), merely collateral. That action was brought to recover the value of over three thousand shares of the stock of a manufacturing corporation, which, as the complaint alleged, the plaintiff was entitled to under an award requiring the defendants to pay the value of such stock on a day named. Upon affidavits showing that, in order to ascertain the value of the stock, the examination of a long account would be necessary as it was essential to look into the assets and liabilities, an order of reference was granted. The order was reversed by this court upon the ground that the account was not directly involved, but was necessary only for the incidental purpose of ascertaining the value of the corporate assets, in order to arrive at the value of the stock. In that case the account was not suggested by the pleadings, but was subsidiary and collateral, and not, as in this, directly involved by the command of the statute and the issues raised by the allegations of the parties.

An examination of the account here in question is necessary to establish the debt, which it is the object of the action to recover, through a sale of the property fraudulently transferred. The plaintiff must establish its entire claim in order to share ratably with the other creditors in any distribution

that may be made. While the amount collected may be distributed through the Surrogate's Court, it may be brought into the court where the action is tried and distributed through its agency. The account would thus become the immediate object of the action. Besides, as we have seen, it is essential that the creditor should prove a debt of more than one hundred dollars, in order to have a standing place from which to attack the transfers, and, for aught that appears, an examination of every item of the account in question may be necessary for this purpose. While mere items of damage are collateral, items of debt are not, when a statute authorizes and requires the debt to be established upon the trial of the action. When denied, they are directly at issue and may be the only issue joined by the pleadings.

The Code of Civil Procedure authorizes the court, of its own motion, or upon the application of either party, without the consent of the other, to direct a trial of the issues of fact by a referee, where the trial will require the examination of a long account on either side. (Sec. 1013.) In this case, the trial of one of the direct issues of fact will involve the examination of nearly one thousand items of account. (*People* v. *Wood, supra.*) The action belongs to a class never triable, as matter of right, before a jury. (*Rowland* v. *Rowland,* 141 N. Y. 485.) No difficult question of law is involved, and justice as well as convenience will be promoted by a trial before a referee, who has the time to proceed deliberately and investigate thoroughly.

We think that the Special Term had the power to make the order of reference and that the power was discreetly exercised.

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.