LILIENTHAL v. DRUCKLIEB et al.

(Circuit Court of Appeals, Second Circuit. March 1, 1899.)

No. 40.

1. CREDITORS' SUIT—DECEASED DEBTOR—NECESSITY OF ADMINISTRATION.

Laws N. Y. 1894, c. 740, authorizing a creditor of a deceased insolvent debtor to bring an equitable action in the nature of a creditors' bill for the benefit of himself and other creditors to recover assets fraudulently conveyed by such debtor, without the previous recovery of a judgment and issuance of an execution, does not depend on the existence of a legal representative of the deceased, or of his refusal to act, but may be brought independent of such representative.

2. FRAUDULENT CONVEYANCES—ACTION TO VACATE—SUBSEQUENT CREDITORS.

Where a voluntary conveyance is made and received with an actual intent to defraud the grantor's existing creditors, and the grantee participated in the fraud, it is immaterial whether creditors attacking it are prior or subsequent creditors.

3. CREDITORS' BILL — ACCOUNTING — CREDIT CLAIMS — MASTER'S DECREE—ALLOWANCE.

Where a fraudulent grantee of an insolvent's assets fails to prove that a credit claim was actually applied to a judgment against his grantor, and there was evidence that the grantee had converted it, a master's report charging him with such sum in an accounting on a creditors' bill against him was correct.

Appeal from the Circuit Court of the United States for the Southern District of New York.

92 F.—48

H. B. Twombly, for appellant Chas. A. Drucklieb.

Louis O. Vandoren, for appellant J. C. Drucklieb.

Wm. H. Blymyer, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. In the year 1888, and prior thereto, Maurice E. Lilienthal, who was a commission merchant in France, and resided in Paris, had a branch house at 52 Greene street, in the city of New York, which was for a few months prior to August 1, 1888, in the sole charge of an agent or employé, Charles A. Drucklieb, one of the defendants. In the summer of 1888, Lilienthal was carrying on a suit against Willy Wallach and Edgar S. Blackwell, partners by the name of Wallach & Co., in which the defendant set up a counterclaim for damages, amounting to about $14,000, which amount Lilienthal knew that he was in danger of being compelled to pay, and in which suit judgment for $14,112, hereinafter called the "Wallach judgment," was entered against him on September 21, 1888. For the purpose of defrauding his creditors and placing his property beyond their reach, Lilienthal agreed with Drucklieb, prior to the date of the judgment, to make a pretended sale to him of all his (Lilienthal's) property at 52 Greene street, and the accounts and dues belonging to his New York business. This nominal sale was without actual consideration, but it pretended to be for $100 in cash and a release of the wages to be due to Drucklieb on August 1, 1888. The property was worth about $14,000 or $15,000. Drucklieb knew that the object of this subterfuge was to defraud Lilienthal's creditors, was privy to the attempt, and took the pretended ownership of the property to carry the fraud into effect. Having learned, on October 3, 1888, of the Wallach judgment, Drucklieb obtained from one Bainbridge, as attorney for Lilienthal, on October 5, 1888, a written bill of sale dated August 1, 1888, of the New York property and assets. Supplementary proceedings were forthwith commenced on the Wallach judgment, a receiver of Lilienthal's property was appointed, and Drucklieb was examined at length. As the immediate result of this examination, he was ordered to deposit, and did deposit, in the registry of the court, $1,920, collected by him upon a debt due to Lilienthal, and $7,800, the proceeds of a quantity of Lilienthal's dry goods which he (Drucklieb) sold to Wechsler Bros., or their agent, Dreyfus, in October, 1888. Suits were commenced by Wallach & Co. to recover debts due to Lilienthal in Chicago and Boston. In pursuance of stipulations signed by the attorneys for Wallach & Co., Drucklieb, and the receiver, the moneys in the registry of the court were, by orders of October 3, 1889, withdrawn, were deposited in a bank in Jersey City in the names of Drucklieb and Wallach's attorney, and were divided between Drucklieb and Wallach & Co., the former receiving about $6,237, and the latter $3,477.31, who were also allowed to collect the Chicago and Boston accounts due Lilienthal. Subsequently, on January 29, 1890, Lilienthal and Wallach & Co. made an agreement of settlement, by which, upon their receiving $5,000, they were to discharge him. Apparently, Lilienthal knew nothing of the division of October, 1889. No satisfac-

tion of the judgment has ever been entered. The claim was made both before the circuit court and upon this appeal that the $3,477.31 delivered to the attorney for Wallach & Co. were paid upon their judgment, but the testimony strongly tends to the conclusion that this division was a private arrangement, in which Lilienthal was to have neither benefit nor protection, and was a dishonest transaction, by which Drucklieb practiced a second fraud. This subject will be more particularly considered hereafter. In February, 1889, Drucklieb went to Paris, and Lilienthal gave him a paper or affidavit by which he confirmed the Bainbridge sale. About this time it is apparent from Drucklieb's letters that he conceived the plan which resulted in his retention of a large part of the avails of this pretended sale, his cutting loose from Lilienthal, and an arrangement with one Herzig, who had been Lilienthal's bookkeeper, by which they began a competing business in New York about May 1, 1889, Herzig being the agent in Paris. This is manifest from the letters of Drucklieb, written in May, June, July, and August, 1889, and needs no confirmation from the inadmissible testimony either in Herzig's letter to him of April, 1889, or in the criminal proceedings in France against Herzig for embezzlement, instituted at the instance of Lilienthal. On May 1, 1889, the other defendant, Julius C. Drucklieb, a brother of Charles A. Drucklieb, became his partner in this New York business. Julius had been a manufacturer in Connecticut, brought some capital to the new firm, went to Paris in July, 1889, partly for the purpose of assisting his brother in the separation from Lilienthal, and became familiar with Herzig. There is no testimony that he was a party to the fraud of August 1, 1888. He knew it subsequently, and has reaped advantage from it, but no specific portion of the avails of Lilienthal's New York property was traced to him. All that appears is that on May 1st he formed a partnership with his brother, to which Charles undoubtedly contributed capital derived from the Lilienthal assets, and they have continued in a profitable business ever since. There is no adequate testimony to show a pecuniary liability of any specific sum against Julius Drucklieb. Lilienthal was married to the complainant July 31, 1865, in Paris, and died August 25, 1894. Prior to the marriage, the future husband and wife entered into a contract in accordance with the then existing Civil Code of France, whereby the complainant contributed as dower certain rentes or securities of the government of France, certain railroad stocks, and certain other securities and property of the value of 161,362.21 francs or $31,031.19 of the money of the United States, which contract was duly registered in the Sixth bureau in Paris on the 3d day of August of that year. On or about the beginning of the year 1892, the complainant, upon the theory that her husband had disposed of said rentes and said railroad stocks without her knowledge or consent, began a suit against him for a separation of their property, in the civil tribunal of the Seine, on the 3d day of February, 1892. Said tribunal, being a court of competent jurisdiction, according to the laws of France, to entertain suit in the said premises, granted the complainant's prayer, restored to her the right of contracting as a feme sole, and ordered judgment

to be entered in her favor and against the said Lilienthal in the sum of $31,031.19 in the money of the United States, with interest from the 5th day of February, 1892. Upon this judgment the sum of $1,914.42 has been collected. Adequate proof was offered of this judgment by a copy proved to be a true copy by a witness who compared it with the original, which was in the custody of the clerk of the proper court, legally having charge of it, and it was also proved to be in the legal and usual form of such judgments in France, and to have been accompanied with the formalities in regard to publicity which the French law prescribes, and to have been in accordance with the provisions of the law by which the wife is enabled to regain from the husband the avails of her estate which he has wrongfully sold, and of which he has received the proceeds. No testimony was offered to show any fraud or collusion between the parties. It is a judgment in a suit between two citizens of France, "rendered by a court having jurisdiction of the cause, and upon regular proceedings and upon due notice" (Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139), and any criticism made upon its validity rests merely in surmise. Lilienthal continued, until his death, to do to a certain extent a commission business in Paris, having a branch office in New York. The testimony of his daughter in regard to facts within her own knowledge, and not from hearsay, shows sufficiently that after 1892 his business was very small, and that at the time of his death he had no goods, except an old stock of groceries, in his store room. In 1893 he had no old goods of any kind, and but a very small quantity of new goods. Rejecting all testimony from hearsay and from Herzig's letter, the record shows his insolvency prior to his death. This suit was brought by the complainant, Clothilde Lilienthal, to compel the payment to the creditors of her husband of the avails of the property which came into the possession and enjoyment of one or both of the defendants in pursuance of a scheme of fraud on the part of Lilienthal, known to and participated in by them, or one of them, to defraud his creditors. The bill in equity was brought under the provisions of chapter 740 of the statutes of the state of New York of 1894, which went into effect on May 21, 1894, and before the bill was filed, and is as follows:

"That any executor, administrator, receiver, assignee or trustee of an estate, or the property and effect of an insolvent estate, corporation, association, partnership or individual, may for the benefit of creditors or others interested in the estate or property so held in trust, disaffirm, treat as void, and resist all acts done, transfers and agreements made, in fraud of the rights of any creditor, including themselves and others, interested in any estate or property held by or of the right belonging to any such trustee or estate. And any creditor of a deceased insolvent debtor having a claim or demand against the estate of such deceased debtor exceeding in amount the sum of one hundred dollars, may, in like manner, for the benefit of himself and other creditors interested in the estate or property of such deceased debtor, disaffirm, treat as void, and resist all acts done, and conveyances, transfers and agreements made, in fraud of the right of any creditor or creditors, by such deceased debtor, and for that purpose may maintain any necessary action to set aside such acts, conveyances, transfers or agreements; and for the purpose of maintaining such action, it shall not be necessary for such creditor to have obtained a judgment upon his claim or demand, but such claim or demand, if disputed, may be proved and established upon the trial of such action. And the judg-

ment may provide for the sale of the premises or property, when any conveyance or transfer of the same is set aside, and that the proceeds thereof be brought into court or paid into the proper surrogate's court to be administered according to law."

No administrator of Maurice Lilienthal's estate was ever appointed in the state of New York. The circuit court found that the sale to Charles A. Drucklieb was for the purpose of defrauding creditors, and directed a reference to a master to ascertain the amount of money which came into the hands of either of the defendants by reason of the pretended transfer. The master reported that Charles A. Drucklieb had received and retained from such sale a sum which, without interest, amounted to $8,936.07. The court decreed that the defendants should pay into court that sum, with interest, for the benefit of the creditors of Lilienthal, and pay to the complainant her costs. 84 Fed. 918. From this decree the defendants appealed.

The appellants insist that this action cannot be maintained under the New York statute which has been quoted without joining an administrator of Lilienthal as a party defendant, and without alleging or proving that his representatives failed to do their duty; and divers cases are relied upon, which do not relate to this statute, or which treat of the general rules of courts of equity when their powers had not been enlarged by statute. For example, Prentiss v. Bowden, 145 N. Y. 342, 40 N. E. 13, which is apparently relied upon by the appellants, was an action brought by a judgment creditor in his own behalf to set aside a fraudulent conveyance made by his debtor, the unsatisfied execution, which in such case is necessary for the purpose of showing that the creditor had exhausted his remedy at law, having been issued after the death of the debtor, without notice to his representatives or permission of the surrogate. The action was for the purpose of securing payment of the complainant's own debt, without reference to the other creditors. Chapter 740 of the Laws of 1894 was an amendment of chapter 487 of the Laws of 1889, which enabled a creditor of a deceased insolvent debtor, for the benefit of himself and the other creditors, to bring an equitable action in the nature of a creditors' bill without the necessity of a previous judgment, and the issuance of an unsatisfied execution; and the power of the creditor to commence such a suit does not depend upon the existence of a legal representative of the deceased, or his refusal to act. The statute is an enlargement of an old remedy which was provided in chapter 314 of the Laws of 1858. Bank v. Baker, 148 N. Y. 581, 42 N. E. 1077.

The appellants also assert that, inasmuch as the complainant became a creditor after the fraudulent sale, she is not in a position to attack the transfer. It is well established that, "when a voluntary conveyance is made and received with an actual intent to defraud the then existing creditors of the grantor, it is not a bona fide conveyance which can protect the grantee against the claims of subsequent creditors" (King v. Wilcox, 11 Paige, 589); and, if the grantor's or vendor's actual fraudulent design is participated in by the grantee or vendee, it is immaterial whether the attaching creditors became creditors before or after the conveyance or the sale (Day v.

Cooley, 118 Mass. 524; Dewey v. Moyer, 72 N. Y. 76; Kehr v. Smith, 20 Wall. 31; Bassett v. McKenna, 52 Conn. 437; 1 Story, Eq. Jur. § 361).

The appellants object to the nonallowance of $3,477.31 which was received by Wallach & Co. from the fund in court, upon the ground that it was paid and received upon their judgment. It appears in the testimony of Frank E. Blackwell, a witness introduced by the defendants before the master, that he made, as attorney for Wallach & Co., a written agreement with Drucklieb in regard to this division, which paper the defendants had in their possession at the time of the examination, but which was not placed in evidence. It was within their power to have shown clearly upon what account this payment was made, or to show facts from which an inference could easily be drawn. They did not make an attempt, except by a leading question put to Drucklieb, whose testimony possesses no weight; and Blackwell declined to say that the payment was on account of the judgment. The defendants could have established the character and the object of this payment, if it was actually to be applied upon the judgment, by circumstances which the master would have been quick to appreciate, but they neglected to do so.

As is usual, where testimony in bills of equity is taken under the sixty-seventh rule, irrelevant and unimportant testimony was presented to the examiner. Among the appellants' assignments of error, sundry exceptions to the admissibility of this class of evidence are contained. We have examined all that are mentioned in the appellants' brief, and are of opinion that the testimony referred to in the assignments of error Nos. 26, 27, 28 (so far as it refers to the answer to the eighth cross interrogatory), 29, and 35, the first and second paragraphs of No. 36, and Nos. 38, 39, and 40, was inadmissible or immaterial, but is unimportant, and without influence upon the issues in the case. The exhibits referred to in assignment of error No. 48 are not contained in the record, and no adequate information is furnished in regard to them. As J. C. Drucklieb is found not to be liable, the assignments of error in regard to the admission of testimony against him need not be examined.

The conclusions of the master and the circuit court in regard to the account between C. A. Drucklieb and Maurice Lilienthal are sustained. The decree of the circuit court is directed to be modified, without costs of this court, and the cause is remanded to that court, with directions to dismiss the bill, without costs, as against Julius C. Drucklieb, and to enter the same decree which was previously entered against Charles A. Drucklieb.