## In re HOFFMANN.

(District Court, S. D. New York. July 12, 1900.)

BANKRUPTCY — DISCHARGE OF BANKRUPT — CONCEALMENT OF ASSETS — SALE — FRAUD.

Evidence that a bill of sale for a stock of goods was made by the owner to an employé on a small salary; that only a small part of the alleged consideration was paid in cash, the balance being represented by an alleged indebtedness for borrowed money, which the circumstances of the vendee indicated an inability to loan; that although the vendor was a married man, with a family to support, and the alleged ground of making the transfer was that the business had run down, the vendor after the sale became the employé, in turn, of the vendee, and the business was continued the same as before; that the vendor's bank accounts showed no decline in his business either before or since the bill of sale; that none of the claims filed

against the vendor in bankruptcy were in favor of business creditors; and that the vendor's wife had obtained a separation from him, and he had become liable under a decree for the payment of alimony,—shows such a concealment of assets by the vendor as will bar his discharge in bankruptcy.

In Bankruptcy.

The following is the opinion of PRENTISS, Referee:

Two specifications in opposition to the discharge of said bankrupt were filed in behalf of said John Boyle, which said specifications are, in substance, as follows:

(1) That said bankrupt knowingly and fraudulently concealed certain of said assets and has failed to set forth all his assets in his schedules, in that he failed to place in his assets a stock of goods, consisting of awning cloths and materials, etc., and store fixtures at premises No. 270 West Broadway, and also the good will of his business, and his right, title, and interest in a certain patent for a lock, which in fact belong to him, but which he attempted to transfer to Alice L. Dolon about the year 1898 by indenture in writing, which said transfer was without consideration, and which said stock, fixtures, and good will of said business and patent were reasonably worth about $10,000, and that said bankrupt never really parted with possession or control of said property and patent, but still has them concealed under the name of said Dolon.

(2) That the bankrupt has intentionally and fraudulently omitted to place in his schedules the property above mentioned, and transferred and assigned them to said Dolon subject to a secret trust by which said Dolon was to hold said property until the bankrupt was relieved of certain obligations which he was able but unwilling to meet.

The substance of these specifications is that the bankrupt transferred all his property in 1898 to Alice Dolon without consideration, to avoid the payment of certain debts, and on the secret trust that the same should be held for or returned to him.

It appears from the testimony in substance that the bankrupt was in the business of manufacturing awnings, etc., at 270 West Broadway; that he had been in business since about 1871; that about 1892 said Alice Dolon entered the employment of the bankrupt as bookkeeper, machine worker, and attending in the store, at a salary stated by the bankrupt's wife to be about six or seven dollars per week, but said by the bankrupt to be from ten to fifteen or seventeen dollars a week, the high rates being paid during the busy season, from the 1st of March to the end of September in each year; that at the time of entering bankrupt's employ, she was a poor woman, dependent upon her own work, and that she continued in the bankrupt's employ down to about February, 1898, the time of the transfer of his property to her. This transfer was made by a written bill of sale, dated February 14, 1898, in which the consideration is stated to be $1,200. It appeared, however, from the bankrupt's statement that only $200 of this amount, or thereabouts, was paid in cash, the remaining $1,000 being the amount for which he claimed to have been indebted to the said Dolon for moneys borrowed at divers times, previous to said date.

It further appears that since the said transfer the business has been conducted at the same place and with the same fixtures and appliances under the name of "Wm. H. Hoffmann, Mgr., A. Dolon, Successor," and on the letter heads in use in said business the name of Wm. H. Hoffmann appears in large letters, the rest of the title above given appearing in much more modest type, as appears by one of said letter heads hereto annexed, marked "Schedule C."

It further appears that ever since the transfer of said business, the bankrupt has been in the employment of the said Dolon in said business, as he expressed it, running errands and doing what she tells him to do. It also appears that the business has proceeded much as theretofore, and the purchases have been made from some of the same parties, including the opposing creditor, John Boyle.

It also appears that the bankrupt is a married man, with wife and family; that his wife has obtained a separation from him, and that he became liable to pay her alimony under a decree in the proceeding for such separation, and

that she has brought an action against the said Alice Dolon, claiming damages for the alienation of her husband's affections.

It is claimed by the opposing creditor that this transfer of property to Alice Dolon was made by the bankrupt with a view to escape the payment of a larger sum as alimony to his wife, and some foundation for this claim appears in the testimony of the witness Banton. On the other hand, it is claimed by the bankrupt that his business had been running down since 1892 or 1893 until the date of the transfer, which seems to be the only reason given by him for selling out the business.

The transfer of the business is not controverted, and appears by the bill of sale which was put in evidence. It remains to consider whether it was made in good faith, or subject to some secret understanding whereby the property was to be held for the benefit of the bankrupt. As bearing upon this question, it is well to consider:

(1) The alleged reason for the transfer.

(2) The consideration.

(3) The general circumstances of the case.

(1) The bankrupt claims that the transfer was made because his business had run down and became of little value; if that be so it is hard to understand why he wished to sell the business to a person who had been, so far as it appears, a faithful employé for six years, and also why, if the business were bad, he should be willing, after selling it to a person of less experience than himself, to enter into the employment of that person on a salary, and that too when he had a wife and family to support. It is difficult to see how he could expect to realize more as an employé in the business in charge of his former store attendant than he could make out of it himself when he was in sole control. If, as the bankrupt intimates, the business were so bad that he wished to dispose of it, it would seem that he would have made some effort to dispose of it to people familiar with that line of business, and at least to have obtained some competitive bids for it, which does not appear to have been the case. Furthermore it appears from the deposits in the Seventh National Bank, in which the moneys received from the business appear to have been deposited, both before and after the bill of sale, that the monthly balances to the credit of the bankrupt continue approximately the same during the entire period when he claims that the business was running down, and it also appears that since the bill of sale the balances in favor of his successor, Alice Dolon, have continued to be very similar in amount. In other words, so far as this bank account shows, the condition of the business, with some fluctuations, has continued to be substantially the same from the 1st of January, 1893, down to the present time.

(2) In regard to the consideration received for the transfer, some $200 or thereabouts was received in cash; as to the remaining $1,000, which the bankrupt claims to have owed said Dolon, the testimony fails to show at what times and in what amounts it was borrowed.

(3) The facts in evidence throw doubt on the whole transaction. Considering the fact that this Alice Dolon was without means in 1892, and had nothing whatever but the salary, varying between six and seventeen dollars per week, it is hardly possible that after deducting her living expenses she could have saved enough money to have loaned the bankrupt $1,000 in the interim between her employment and the transfer of the business. That she might accumulate some small savings is most probable, and this she appears to have done, for in her account in the Greenwich Savings Bank, which was opened on December 31, 1894, by a deposit of $15, it appears that she deposited April 27, 1895, $15; August 9, 1895, $10; January 7, 1896, $25; July 10, $25; April 15, 1897, $20; July 9, 1897, $20; and August 3, 1897, $10; and this would seem to be a fair statement of what she would be likely to accumulate during that interval of time; so that it seems highly improbable that she could have advanced the bankrupt $1,000, as claimed, especially as there was no money withdrawn from this account since its inception. The showing of the various bank accounts is also suggestive. Prior to the date of the bill of sale, February 14, 1898, Alice Dolon appears to have only the account in the Greenwich Savings Bank, above mentioned. On the other hand, the bankrupt had an account in the Greenwich Savings Bank, which was opened October 19, 1894, and was closed February 15, 1898. He also had an account in the Dry Dock Savings Bank,

opened September 29, 1895, and closed February 15, 1898. He had also what appears to be his business account in the Seventh National Bank, opened October, 1894, and closed February 15, 1898. It further appears that since the date of the bill of sale Alice Dolon, besides adding $80 to the Greenwich Savings Bank account on July 9, 1898, opened another account in the Bank for Savings on July 10, 1899, and also opened an account in the Seventh National Bank, above mentioned, on the 14th of February, 1898, which accounts are all still open. It thus appears that at about the date of the bill of sale all the bank accounts of the bankrupt were closed, and that then or soon thereafter accounts in the name of Alice Dolon were opened.

Furthermore, it appeared by the schedules, which disclosed only six creditors, that none of the claims are in favor of business creditors, existing prior to February 14, 1898, except probably the claim of the opposing creditor, John Boyle.

Under these circumstances, it is impossible to believe that bad business or business debts induced the bankrupt to make an assignment, and the testimony points somewhat directly to the transfer for a trifling consideration of a fairly good business, and a continuation of the same interests under different names. There appears to have been a transfer of the entire business, and that not a bad one, for no sufficient reason, and for no sufficient consideration.

Whether the transfer was made to avoid the payment of increased alimony or not is not important, if in fact the bankrupt thereby attempted to conceal his property from creditors. It is claimed by the counsel for the bankrupt that as the creditor Boyle was no creditor at the time of the transfer, and has since, although suspecting the nature of the transaction, continued to deal with the bankrupt's successor in business, he is not in a position to set aside the transfer, but the question here is not, what this creditor is in a position to do, but whether the facts are such as to justify any action on the part of the trustee to recover these moneys for the creditors generally. It is also suggested that, if there were a secret trust, it was of such a nature that the bankrupt himself could not enforce it against the will of the transferee, Alice Dolon. While this may be true as regards the bankrupt, it may not be true as regards the trustee in bankruptcy.

Upon all the testimony and proceedings in this matter, I am unable to avoid the conclusion that the transfer to Alice Dolon was not a bona fide transaction, and that practically the business has continued to be managed by and for the interest of the bankrupt, and whether or not it may be possible for the trustee to set aside the transaction on the ground of the secret trust, and recover assets to the estate, the testimony does not, in my opinion, present a case in which a discharge should be granted.

I am therefore of the opinion that the bankrupt's discharge should be denied.

Franklin Bien, for petitioner.

BROWN, District Judge. Upon the evidence in the above case a jury would, in my judgment, find without hesitation that the transfer to Dolon was a mere subterfuge and sham, and that the business was in effect all the time the business of the bankrupt, as before, carried on upon a secret trust for his benefit, and hence a concealment of assets from the trustee which should bar the bankrupt's discharge.