## In re WILCOX.

### (Circuit Court of Appeals, Second Circuit.   December 6, 1900.)

### No. 18.

**1. BANKRUPTCY—DISCHARGE—CONCEALMENT OF ASSETS.**

The failure of a bankrupt to include in his petition and schedules real estate which he caused to be conveyed to another some years before for the purpose of defrauding his then creditors, and which is still held by the grantee on a secret trust for the bankrupt, is a fraudulent concealment of property from his trustee, and his verification of his schedule constitutes a false oath, which defeats his right to a discharge.

**2. SAME—HEARING OF OBJECTIONS TO DISCHARGE—EVIDENCE.**

The testimony of third persons, taken on the examination of a bankrupt before the referee, is not directed to a defined issue, and is inadmissible on a subsequent hearing of specifications against the bankrupt's application for discharge.

Appeal from the District Court of the United States for the Northern District of New York.

This is an appeal from an order of the district court for the Northern district of New York, which confirmed the report of the referee upon the petition of Joseph H. Wilcox, a bankrupt, for his discharge from his debts, and upon the specifications in writing of a creditor in opposition thereto, and adjudged that the discharge of the bankrupt was denied. Wilcox, a resident in the Northern district of New York, filed his petition in bankruptcy in the district court for said district. Judge Coxe deeming himself disqualified to hear the issue joined upon the petition for a discharge and objections filed thereto, the matter was certified to the district court for the Northern district of New York.

Kernan Bros. & Quin and Max J. Kohler, for appellant.

Charles D. Adams, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.   The specifications in opposition to the discharge were, in substance, as follows:

"(1) That Wilcox, while a bankrupt, concealed from his trustee property belonging to his estate in bankruptcy, viz. lot No. 13 in the Devereux tract, in Oneida county, which he had placed in secret trust for his benefit before filing his petition and being adjudged a bankrupt, the apparent title to which lot was in one William H. Bigelow, his brother-in-law. (2) That the property was omitted from his petition and schedules, and for that reason the verification of each thereof was false."

Lot No. 13 and the buildings thereon were omitted from the petition and schedules of the bankrupt. The testimony showed that Wilcox gave a mortgage on July 16, 1888, to Warner Miller, of over 8,000 acres of land in Oneida and Herkimer counties, in the state of New York, including a part of the Devereux tract, which the line between those counties divides, to secure accommodation indorsements. The Oneida County Bank discounted notes of this class amounting to $10,000, which were renewed, were unpaid, and have been proved in the bankruptcy proceedings. Wilcox also gave on November 25, 1889, to the Oneida County Bank, another mortgage on about 4,000 acres of the land in Herkimer county covered by the Miller mortgage, to secure other notes, amounting to $4,000, which

were renewed, were unpaid, and have also been proved against the bankrupt estate. Lot 13 in the Devereux tract in Oneida county is not in the Miller mortgage. Lots 5, 6, 7, 12, and 14 in that tract, and in the same county, were included in the mortgage to Miller. Each of these lots contains about 100 acres, and all of them are covered by or surround Otter Lake. After the date of the Miller mortgage, Wilcox permitted all these lots and other portions of the mortgaged lands to be sold for taxes, and at the sale in 1893 by the Oneida county treasurer the Oneida county lots which have been named were bid in by one Sanger, who, at Wilcox's instance, assigned the bids to one Bigelow, in whose name deeds were made out by the county treasurer. Bigelow was Wilcox's brother-in-law, and a man of no substantial pecuniary means. Wilcox paid the consideration for the purchase of lot 13 and transacted the entire business. The mortgagees, when they learned of these pretended sales, compelled Wilcox and Bigelow to execute to Miller a deed of trust, so as to replace in the mortgage security the lots theretofore in the mortgage, which had been lost by these tax sales and deeds; but lot 13 remained in the name of Bigelow. Before the date of this deed of trust, Wilcox had procured a map of the Otter Lake lots to be made out. Cottage sites were laid out about the lake, and in 1896 or 1897 he built a summer hotel upon lot 13, which was burned in 1897, and rebuilt by him in 1898. The insurance money of $5,000 paid under the policy in the name of Bigelow was delivered by him to Wilcox. Wilcox kept the hotel in 1897, and had charge of it in 1898, furnished all the money for it, and was its actual owner. The title in Bigelow was a pretense, and the suggestion that Wilcox was his agent in the hotel ownership and business is without foundation. The tax deed was made and received in Bigelow's name, without consideration moving from him, in pursuance of a collusive scheme of Wilcox, who was heavily indebted at the time, so that he might be enabled to remove the Otter Lake property, and whatever should be added thereto, from the reach of existing or future creditors. All the facts connected with these various tax sales and tax deeds to Bigelow show that the object of all these conveyances was to defraud the existing creditors of Wilcox, among whom was the Oneida County Bank; and that which is true in regard to the conveyances of lots under the Miller mortgage is especially true in regard to the conveyance of lot 13. "When a voluntary conveyance is made and received with an actual intent to defraud the then existing creditors of the grantor, it is not a bona fide conveyance, which can protect the grantor against the claims of subsequent creditors." King v. Wilcox, 11 Paige, 589: Lilienthal v. Drucklieb, 34 C. C. A. 657, 92 Fed. 753, and cases therein cited. We concur in the finding of facts by the district judge that the property was held in Bigelow's name upon a secret trust for the bankrupt's benefit, and was fraudulently concealed from the trustee, and fraudulently omitted from his schedules.

Upon the hearing before the referee upon the petition for a discharge and the specifications in opposition thereto the referee admitted the minutes of the testimony of Albert M. Mills, Warner

Miller, and Bigelow, taken before the same referee at the examination of Wilcox in the bankruptcy proceedings. The appellant excepted to the admission of this testimony as incompetent upon the trial of the issues arising upon the petition for a discharge, the ground of the exception being that the testimony was given in other suits, and therefore was not admissible in this suit. The testimony was taken upon the examination of Wilcox in the same bankruptcy proceeding, and the objection of the appellant rests upon the idea that the different motions, petitions, and hearings thereon are several suits, but "a proceeding in bankruptcy, from its commencement to its close upon the final settlement of the estate, is but one suit. The several motions made and acts done in the bankrupt court in the progress of the cause are not distinct suits at law or in equity, but parts of one suit in bankruptcy, from which they cannot be separated." Wiswall v. Campbell, 93 U. S. 347, 23 L. Ed. 923. The testimony taken upon the examination of the bankrupt is taken in the whole pending proceeding, and was properly introduced and read upon the hearing of a petition for a discharge. The order and judgment of the district court are affirmed, with costs of this court.

### On Rehearing.

#### (July 17, 1901.)

Upon the examination of the bankrupt and other witnesses under section 21 of the bankruptcy statute of 1898, the bankrupt was present in person and by his counsel, and the witnesses, including himself, were subjected to cross-examination by his counsel. The transaction which was made the issue in the objections to his discharge was distinctly a subject of the examination. At the hearing upon the specifications in opposition to his discharge this testimony was offered in evidence, was objected to by the bankrupt's counsel as incompetent and immaterial, and was admitted subject to the objection. The testimony of Bigelow was important, and, if not properly admitted, the remaining evidence was inadequate to prove the specifications. The testimony of Miller and Mills did not bear materially upon the fraudulent concealment of the particular lot of land mentioned in the specifications. The propriety of admitting, at the hearing upon the application for a discharge, Bigelow's testimony, and that of Miller and Mills, upon the examination, and before the issues upon the objections to the bankrupt's discharge had been framed, was the question upon the reargument. In Re Krueger, 2 Low. 182, Fed. Cas. No. 7,942, Judge Lowell examined section 26 of the bankruptcy act of 1867 (Rev. St. § 5086), which corresponds to section 21 of the present act, and says:

"These examinations thus stand, in effect, on the footing of summary bills of discovery. The discovery cannot be limited by reference to an action pending, for there is no such limitation in the law; but it is to be confined to the subject-matter, the trade, dealings, and estate of the bankrupt."

The right of the trustee extends to a discovery of whatever tends to bring to light the estate of the bankrupt so as to enable the trustee to pursue the estate, and reduce it to possession, and to enable

creditors "to discover transactions which may affect the right of the bankrupt to obtain a discharge." In re Horgan, 39 C. C. A. 118, 98 Fed. 414. The testimony of the bankrupt himself, which is ordinarily reduced to writing by or under the supervision of the referee, and given under the solemnity of an oath, amounts, when protection against criminative testimony has been waived, to his admission, which can be used elsewhere, but not in any criminal or penal proceeding, as an admission against himself. In re Krueger, supra. The testimony of third persons upon these roving attempts at discovery is not directed to a defined issue, and therefore the rules of evidence are not carefully applied, and testimony is liable to be given which is not carefully guarded, and may be unconsciously derived from hearsay. Inasmuch as no issue has been framed, the bankrupt or his counsel cannot always perceive the inferences which may be drawn from the testimony, and therefore will not produce rebutting facts. The danger in using the information which has been thus gathered in one of these "fishing excursions" as testimony upon which a court can rely in an issue between the bankrupt and his creditors is such as to render its admission inexpedient. It is liable to produce an injustice, and the testimony may, therefore, be regarded as inadmissible. The attention of the district judge was not apparently called to this question, for it did not appear in the exceptions to the referee's report. The order of the district court is reversed without costs, and the cause is remanded to that court, with liberty, upon a proper application for that purpose, to take new proofs upon the specifications presented by the objecting creditor. Submitted without argument.