In re BULLWINKLE.

(District Court, S. D. New York. November 1, 1901.)

BANKRUPTCY—DISCHARGE—CONCEALMENT OF ASSETS.

An insolvent, within four months prior to his bankruptcy, organized a corporation, to which he transferred certain of his property and assets. He also paid in some money and withdrew about an equal amount. The greater part of the stock was issued to him, and he transferred the same to others to whom he claimed to be indebted, but the evidence justified an inference that such transfers were not bona fide. *Held*, that his failure to mention such stock or the property transferred to the corporation in his schedules constituted a concealment of assets, and his verification of such schedule a false oath, which defeated his right to a discharge.

In Bankruptcy. On motion for confirmation of referee's report recommending the bankrupt's discharge.

Jeroloman & Arrowsmith and Kurzman & Frankenheimer, for opposing creditors.

Goepel & Wahle, for bankrupt.

ADAMS, District Judge. This is a motion for confirmation of referee's report, as special commissioner, finding the creditors' specifications not sustained, and recommending the discharge of the bankrupt. It appears that in 1900 the bankrupt was engaged in business as proprietor of the Hotel Aulic, at Thirty-Fifth street and Broadway, New York, and was conducting a restaurant business at 524–526 Columbus avenue. He filed his petition for discharge from his debts on the 7th day of January, 1901, and was duly adjudicated a bankrupt. Specifications in opposition to the discharge were filed, and referred to the referee for investigation and report. The specifications were definite in form, and alleged concealment of assets and false oaths in connection with various transactions of the bankrupt, among others that during 1900 he had disposed of the properties mentioned, and concealed the proceeds thereof, and made false oaths in such connections. There was a further charge to the effect that the bankrupt caused a corporation to be formed in his own interest, called the Bullwinkle Purveying Company, which absorbed, to some extent, the assets of his estate, and that he omitted such assets from his schedules, and made false oaths concerning them. The only witnesses in the matter were the bankrupt and his son, George Bullwinkle, Jr. Their testimony had been

taken at a meeting of the creditors. The testimony of the bankrupt was admitted before the referee under the authority of In re Wilcox (C. C. A.) 109 Fed. 628, and that of the son by stipulation between the parties.

The corporation mentioned was organized on the 22d of October, 1900, to engage in the business of selling bottled liquors. It was capitalized at $10,000, in 100 shares of $100 each. During November and December $1,075 were paid into the corporation in part payment for 36 shares of the stock subscribed for by the bankrupt's two sons and his wife's sister, persons of small, if any, means, who were apparently dependent, to a great extent, at least, upon the bankrupt. The remaining 64 shares were taken by the bankrupt himself, for which he paid nothing, unless by the transfer of a lease, liquor license, and some merchandise. Shortly prior to the formation of the corporation, the bankrupt had leased the premises No. 2056 Eighth avenue for a term of five years for the purpose of going into the business there himself. This is the lease mentioned. It was informally transferred to the corporation, and the corporation went into the business, with the bankrupt solely in charge. On the 29th of August, 1900, he had applied to the excise board for a license for the same business. This was issued to him on the 8th of November, but about a week afterwards was transferred to the corporation, which paid $250, the fee therefor, with a check signed by the bankrupt as treasurer. In September the bankrupt had in his possession some $2,200 worth of liquors, which had been sold and delivered to him on credit. These liquors he transferred to the corporation. He claimed that the corporation assumed liability therefor, and the creditors accepted such liability in lieu of his own. In November and December he paid into the corporation some $525 in cash, and drew the same, or a little more, out again for his own use. He said he had transferred 62 shares of the stock he received to some of his creditors. At first, he testified that the transfers were in payment partly for goods sold to him prior to the formation of the corporation and partly for goods sold to the corporation. This he afterwards qualified, and said the transfers were in payment of his own debts, partly to a former barkeeper for wages due May 1, 1899, and for money loaned since that time, during which time the bankrupt said he was solvent. Looking through the whole case, I think the circumstances justify the inference that the transfers were not bona fide. He further said the company's business was run at a loss of about $50 per week, and that up to the time of the filing of his petition, when he withdrew from the corporation, it had paid him a salary of $25 per week as secretary and treasurer, and afterwards as an employé.

None of the facts concerning the Bullwinkle Company are stated in the bankrupt's schedules. The only mention there of the corporation is in Schedule B(3), where two shares, subsequently surrendered to the trustee, are described. The bankrupt's Schedule B(6) gives a list of the books used by him in conducting the Aulic Hotel and the restaurant in Columbus avenue, but does not mention the corporation books, in which appear the payments, here-

tofore mentioned, made by him to the corporation in November and December, and withdrawn for his own use from November 14, 1900, to January 30, 1901,—one sum, at least, after he had filed his petition.

In view of these facts, I cannot agree with the learned referee that the bankrupt is entitled to be discharged. It seems to me that the corporation was a mere device to enable the bankrupt to conduct business in his own interest, principally with the assets belonging to his creditors and to their exclusion. He has therefore concealed assets and made false oaths, within the meaning of the law. In re McNamara, 2 Am. Bankr. R. 566; In re Hoffmann, 4 Am. Bankr. R. 331, 102 Fed. 979; In re Bemis, 5 Am. Bankr. R. 36, 104 Fed. 672; In re Kamsler (D. C.) 97 Fed. 194; In re Horgan, Id. 319; Id., 39 C. C. A. 118, 98 Fed. 414; In re Wilcox (C. C. A.) 109 Fed. 628.

The motion to confirm the report is denied. Discharge refused.