## ORR v. PARK.

(Circuit Court of Appeals, Fifth Circuit. Nov. 29, 1910.)

No. 2,078.

1. BANKRUPTCY (§ 340*)—PROOF OF CLAIM—PROCEEDINGS BEFORE REFEREE.

Where a petition of intervention filed in a bankruptcy proceeding set up as a claim against the estate of the bankrupts a note and chattel mortgage on a stock of merchandise executed by them, alleging that they were given to secure a loan of money, but the mortgage, a copy of which was attached, recited that it was given for the purchase money for the goods which were to remain the property of the mortgagee until paid for, the claim taken as a whole was self-contradictory and warranted the referee in requiring proof and investigating its fairness and legality.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.*]

2. BANKRUPTCY (§ 339*)—HEARING ON CLAIMS—WAIVER OF OBJECTIONS TO INFORMALITY.

There is nothing in Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), nor in the rules in bankruptcy, prescribing any particular form for objections to claims, which matter rests largely on the discretion of the referee, and where a claimant appeared in person and by attorney at a hearing on his claim, and testified and took part in the examination of other witnesses without objection, it is immaterial whether pleadings were filed by the objectors, or whether formal notice was given him of the objections.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 339.*]

3. BANKRUPTCY (§ 340*)—PROOF OF CLAIMS—VARIANCE.

A creditor of a bankrupt who files his claim against the estate is required to present a statement under oath of what his claim is, and he cannot sustain it by evidence of an indebtedness arising in a different manner from that stated.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.*]

4. BANKRUPTCY (§ 340*)—FRAUDULENT TRANSFERS—CHATTEL MORTGAGE.

Evidence considered, and *held* to sustain the finding of a referee that a chattel mortgage executed by bankrupts within four months prior to their bankruptcy was made to hinder, delay, and defraud creditors and was fraudulent and void.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.*]

Appeal from the District Court of the United States for the Southern District of Georgia.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of Dunn Brothers, E. J. Dunn and C. M. Dunn, bankrupts. Appeal by Oliver Orr, trustee, from an order of the District Court allowing the claim and sustaining a mortgage in favor of W. C. Park. Reversed.

Upon petition filed January 4, 1909, by certain of their creditors, Dunn Bros., a firm composed of E. J. and C. M. Dunn, engaged then in the business of general merchandise at Molena, Ga., were adjudicated involuntary bankrupts on January 23, 1909.

On March 1, 1909, a petition of intervention was filed with the referee by W. C. Park, the appellee herein, alleging that said firm was indebted to him in the sum of $2,600, with interest, being the balance due on a promissory note dated September 9, 1908, secured by mortgage on the stock of merchandise contained in the store of said Dunn Bros.; a copy of said note and mortgage being attached to the petition. He prayed that said claim be declared a valid prior lien, and that the trustee be ordered to pay over to him from the proceeds of sale of said stock of goods the full amount of his claim if the fund were sufficient, after deducting the expense and costs of making the sale, and, if not sufficient to pay said claim in full, then to pay over to petitioner such sum as may be received from said sale, after deducting the expense and cost thereof.

The referee directed the trustee to investigate said claim, but no formal pleadings, or written notice of objections to the claim, appear from the record to have been filed. On April 16, 1909, the day set therefor by the referee, testimony in regard to the claim, pro and con, was taken before the referee. The petitioning creditors and the trustee, by attorney, and the petitioner W. C. Park in person, and by attorneys, were present. It does not appear from the record that Park, or his attorneys, objected to proceeding with the hearing in the absence of formal pleadings or written objections to the claim, or asked that they be filed or presented. The hearing proceeded, and said Park and other witnesses were examined in the matter. A further hearing was then continued to April 27, 1909, when argument of counsel for the parties was heard by the referee, who, on May 4, 1909, filed his finding in the case, in substance and effect as follows: That the said promissory note and the paper purporting to be the mortgage to secure its payment made by Dunn Bros., the bankrupts, were fraudulent and void, and were made by said bankrupts to hinder, delay, and defraud their creditors; that the recital in said mortgage that it was given for the purchase money of the property described therein was not true; and that said mortgage was executed and delivered within four months prior to the filing of the petition in bankruptcy and was null and void. The paper referred to is "Exhibit A" attached to the claimant's petition, and dated September 9, 1908. It shows by indorsement thereon to have been filed for record on December 19, 1908. T. J. Blassengame, whose name appears on the mortgage as a witness, testified that some time in December, 1908, C. M. Dunn and W. C. Park called on him, and said Dunn took from his pocket a paper and asked him to witness the signature on it. He refused to do so until C. M. Dunn put his name on it, which he did in witness' presence, and the latter then signed as a witness thereto. J. C. Madden, whose name also appears on said mortgage as a witness, testified that about October 1, 1908, at the store of Dunn Bros., he witnessed the mortgage signed by Dunn Bros. to W. C. Park. He did not remember how the paper was signed at the time, but that he witnessed it for E. J. Dunn; that this was two or three months before the failure of Dunn Bros. Witness did not remember whether C. M. Dunn was or not in the store at the time. He thought that he and E. J. Dunn only were present.

Said mortgage recites that the consideration for the mortgage was the purchase money for the entire stock of goods described therein and then purchased by Dunn Bros. from said Park, and provides that the title to the same was to remain in said Park and his assigns until the note was fully paid.

Said W. C. Park testified that he loaned Dunn Bros. $3,825, of which $1,500 belonged to him, $1,200 to his father's estate, and $325 to his grandfather; that he had the money in a desk at his home, the exact amount he

had in the desk at the time of the loan he did not know; that it had been accumulating there for several years. While he kept an account in bank, he also put money in said desk. He stated that he had the transaction with C. M. Dunn, and let him have the money on the date of the mortgage, September 9, 1908; that he thought he had been to the store of Dunn Bros. one night and looked at the stock of goods; and that he had previously agreed to let them have the money when he came down there and looked at the stock of goods. He testified that C. M. Dunn turned the mortgage over to him before he paid Dunn the money; that the mortgage was not witnessed at the time and did not show who signed the name of Dunn Bros. It was witnessed some time after. He further stated that nothing was said at the time the mortgage was given about keeping it off the record. C. M. Dunn also testified that nothing was said at the time the mortgage was made about keeping it off the record. E. J. Dunn testified that the business went right on after the mortgage was given as before, and goods were sold in September, October, and November, etc.; that the money obtained from Park was used personally and in buying cotton and in the business generally. He also testified that a short time before the mortgage was put on record, and just prior to the filing of the petition in bankruptcy, Park said something to him about putting the mortgage on record; that he would have to put it on record to protect himself, or something to that effect. Witness further stated that Park promised his (witness') brother that he would not put the mortgage on record.

The judgment and finding of the referee was that said mortgage was made to hinder, delay, and defraud the creditors of Dunn Bros., the bankrupts, and was null and void. On review the district judge rendered a decree reversing said judgment and finding, and held said mortgage to be a valid and subsisting lien on the mortgaged property, and directed the trustee to pay the amount due thereon to said W. C. Park from the proceeds of said property in his hands. On appeal from this decree the case is here.

Hardeman, Jones, Callaway & Johnston (Geo. S. Jones, M. P. Callaway, and W. H. Beck, of counsel), for appellant.

E. C. Armistead and Martin & Morcock (F. R. Martin, of counsel), for appellee.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

TOULMIN, District Judge (after stating the facts as above). The petition of intervention, which is the proof of ·claim in this case, does not directly or expressly allege the consideration for the note described in the petition. It alleges that "the only security held by petitioner for the balance due is said note and mortgage, which was given to secure the said loan of $3,825 made by petitioner to said Dunn Bros." on the date said note and mortgage were executed and delivered. Thus it impliedly alleges that said note was given for money loaned on that day. Petitioner, however, attaches to the petition, as "Exhibit A," a paper writing which he says is a copy of said note and mortgage, and which he makes a part of the petition. Said writing recites that the consideration of the note is:

"For the purchase money we (Dunn Bros.) hereby mortgage our (their) entire stock of merchandise consisting of fixtures, dry goods, notions, shoes, hats, hardware, groceries, and farm implements for the above advanced money. * * * Now purchased by us from him (W. C. Park) with the proviso that the title to the same is to remain in him and his assigns until this note, with expenses of collection, fully paid off and discharged."

Said writing also provides that, should the maker of the note before its maturity attempt to sell or otherwise dispose of the described property, the note shall become due and payable at once. In this condition the sworn petition was presented to the referee as a claim against the bankrupt estate.

Sections 57a and 57b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]) provides:

"That the proof of claim shall consist of a statement under oath in writing signed by the creditor setting forth the claim, the consideration therefor, and whether any, and if so, what securities are held therefor, and if founded upon an instrument of writing such instrument shall be filed with the proof of claim."

The proof must show the consideration for the claim, and the statement of the consideration must be sufficiently full and explicit to enable other creditors to investigate as to the fairness and legality of the claim. In re Blue Ridge Packing Co. (D. C.) 125 Fed. 619; In re Scott (D. C.) 93 Fed. 418; In re Stevens (D. C.) 107 Fed. 243.

"The proof of claim should be sufficient to enable the referee passing on it to do so intelligently and judicially." In re Wooten (D. C.) 118 Fed. 670; In re Eagles (D. C.) 99 Fed. 695.

If the allegations of the proof do not set forth all the necessary facts to establish a claim, or are self-contradictory, the claim may be disallowed; or the referee may unquestionably order proper and legitimate inquiries into the fairness and legality of such claim, that he may be enabled to pass on it intelligently and judicially. In re Castle Braid Co. (D. C.) 145 Fed. 224.

The proof of claim as presented in this case did not show its consideration with certainty or clearness. It inferentially showed it was for money loaned, but it, with more directness and certainty, showed it was for money due petitioner for a stock of goods, wares, and merchandise purchased by Dunn Bros. from him, the title to which was to remain in him until the note given for the purchase money was fully paid.

The allegations of the proof of the claim were clearly self-contradictory and were, in our opinion, such as to warrant, if not to require, before allowance, an investigation of its fairness and legality, if its absolute disallowance.

"A referee in the interest of fair dealing and good conscience has unquestioned power to postpone the claim of a creditor, and should do so whenever the circumstances are such as to arouse suspicion or to throw doubt upon the validity of the claim." Brandenburg on Bkrcy. § 850.

The referee is vested with a wide discretion in the allowance and disallowance of claims. Brandenburg on Bkrcy. § 862.

But it is contended by the appellee, and was so held by the district judge, that there was no notice by proper pleadings filed before the referee, raising objections to Park's claim, and that the referee's action in investigating it and taking evidence as to its bona fides and validity was without authority and was erroneous. With this contention we do not agree.

The bankruptcy act is silent as to the form of objections to claims against a bankrupt estate. Although, preferably they should be filed in writing, they may be stated orally. Collier on Bkrcy. (7th Ed.) p. 608; Brandenburg on Bkrcy. § 862.

"There is nothing in the act or in the rules in bankruptcy directing the form of such objections." In re Royce Dry Goods Co. (D. C.) 133 Fed. 100.

The court, in Re Cannon (D. C.) 133 Fed. 837, said:

"The manner of making such objections is thus left open, and should, I think, be largely committed to the discretion of the referee."

Whether there was or not any formal notice to Park of the objections made to his claim is, we think, wholly immaterial in this case, as he appeared in person and by attorney at the hearing, was fully examined as a witness, and participated in the examination of the other witnesses in regard to his claim, and, so far as the record shows, made no objection thereto. He thereby waived all informality or irregularity, if any, in the proceeding had.

The form of the claim as presented to the referee, and the facts and circumstances shown by the evidence on the hearing in regard to its validity, were such as to arouse suspicion, and to throw doubt upon such validity. The evidence showed that the statement in the mortgage as to the consideration therefor was not true, and that the indebtedness claimed on the hearing arose in a different manner from that stated. A creditor of a bankrupt estate who files his claim against the estate is required to present a statement under oath of what his claim is, and he cannot sustain it by evidence of an indebtedness arising in a different manner from that stated. Brandenburg on Bkrcy. § 682; In re Lansaw (D. C.) 111 Fed. 365.

Waiving the variance between the statement and the mortgage of the consideration therefor and that testified to on the hearing, we will consider the question presented on the good faith and validity of the mortgage. Park testified that the mortgage was delivered to him by C. M. Dunn and the money given by him to said Dunn on the date of the mortgage, September 9, 1908. It was not witnessed at the time, and neither the signature of C. M. Dunn nor E. J. Dunn, composing the firm of Dunn Bros., was signed to the mortgage. There is also some doubt on the evidence whether it was signed by "Dunn Bros." at that time. However this may be, it appears that Park claimed to be dissatisfied with the mortgage and subsequently carried it to E. J. Dunn and asked him about it. Dunn took it and said "they would fix it." It appears that about October 1, 1908, at the store of Dunn Bros., J. C. Madden witnessed the signing of the mortgage by E. J. Dunn; but said Madden in his testimony does not state what particular signature or name was signed and was witnessed by him. The mortgage is signed "Dunn Bros., by E. J. Dunn." It also appears from Park's testimony that C. M. Dunn had the transaction with him, delivered the mortgage to him, and received the money from him on or about September 9, 1908; but it appears that said C. M. Dunn had the mortgage in his possession on December 19, 1908, and on that day signed it in the presence of the witness Blassengame. So it is we find the mort-

gage in the possession of one of the makers of it in October, and in the possession of the other in December, when each separate and apart from the other signed it in the presence of a witness. It does not appear when, if ever, the mortgage was redelivered to Park, otherwise than by its deposit for record. It was shown to have been in the possession of C. M. Dunn, last prior to its record, and on the date of its record.

No inventory or valuation of the stock of goods seems to have been made and furnished to Park, and no special examination of the stock made by him. Dunn Bros. remaining in possession of the goods, continuing business, and selling goods, just as before the mortgage was made; their failure to sign the mortgage and have it witnessed until from one to three months after it purports to have been made; their possession of the mortgage subsequent to their signing it; and the withholding it from record—are badges of fraud which were sufficient, in our opinion, to warrant the judgment and finding of the referee that the mortgage was made to hinder, delay, and defraud the creditors of said Dunn Bros., and was null and void, in which judgment and finding we concur. Blennerhasset v. Sherman, 105 U. S. 100–118, 26 L. Ed. 1080; Clayton v. Exchange Bk., 121 Fed. 630, 57 C. C. A. 656; Hilliard v. Cagel, 46 Miss. 309.

The decree of the District Court is reversed, and the case remanded, with instructions to proceed in conformity to this opinion.