In re GREER.

(District Court, W. D. Arkansas, Texarkana Division. August 2, 1911.)

1. BANKRUPTCY (§ 136*)—PROCEEDINGS AGAINST BANKRUPT—WITHHELD ASSETS—TRUSTEE'S PETITION—DEFINITENESS.

Where a trustee's petition to compel the bankrupt to turn over assets, alleged to have been withheld, only charged that by reason of a prior statement made by the bankrupt August 5, 1910, showing that he had a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

surplus of $22,815, and that his schedules filed October 13th following indicated a loss of $27,745.76, of which only $19,295.78 had been accounted for, and that the bankrupt necessarily had failed to turn over the balance, it was subject to a motion to compel the trustee to make his petition more definite and certain, and to state specifically what moneys or property the bankrupt had in his possession or control that he had not surrendered.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

2. BANKRUPTCY (§ 136*)—COMPELLING SURRENDER OF ASSETS BY BANKRUPT—
EVIDENCE.

The transcript of the testimony of the bankrupt at his examination before the referee, is admissible on the hearing of the trustee's petition to compel the surrender of assets claimed to be in the bankrupt's hands, after the bankrupt had testified that his testimony so given was true.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Ethma B. Greer. On petition for review of a referee's order requiring the bankrupt to turn over to the trustee $7,010.15. Reversed and remanded.

Webber & Webber and Sam T. Poe, for trustee.

G. G. Pope, for bankrupt.

YOUMANS, District Judge. [1] In October, 1910, Ethma B. Greer was adjudicated a bankrupt. On November 8 and 19, 1910, he was examined before the referee. On the 1st of December, 1910, the trustee filed the following petition:

"Your petitioner, Will Steel, trustee of the above-named estate, respectfully represents that Ethma B. Greer, the bankrupt herein, on and after the 13th day of July, 1910, and on and after the 5th day of August, 1910, owned and had in his hands and possession real and personal property amounting in the aggregate to the sum of $22,815 over and above the debts then owing by him; that said bankrupt's schedules filed herein show that on the 13th day of October, 1910, the date of the adjudication in bankruptcy, said bankrupt owned and was possessed of assets, including the property claimed by him as exempt, of the aggregate value of $7,501.55, while his debts at said date amounted to the sum of $12,432.31; that between the first-mentioned dates and the date of the adjudication in bankruptcy said bankrupt shows a loss in business of $27,745.76, of which sum said bankrupt in his testimony given at the first meeting of creditors herein accounted for the sum of $19,295.79, leaving a balance of $8,450.17 which he failed and refused, and still fails and refuses, to account for; that said sum of $8,450.17, either in money or other property should have been in possession of said bankrupt at the date of the adjudication; and your petitioner alleges that said sum of money or property of the value of $8,450.17 is at this time in the possession or control of said bankrupt, Ethma B. Greer, that it belongs to this estate in bankruptcy, and that said Ethma B. Greer is fraudulently concealing and withholding the same from the trustee herein. Wherefore your petitioner prays an order of this court citing and directing the said Ethma B. Greer, bankrupt, to appear and show cause herein, if any he have, why he should not be required to pay over to petitioner the sum of $8,450.17, or turn over to petitioner property of said value."

On the 12th of December, 1910, the bankrupt appeared and moved the court, in writing, to require the trustee to make his petition more definite and certain, and to state specifically what moneys or property the bankrupt had in his possession or control. This motion was over-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ruled by the referee, to which action the bankrupt excepted. Together with said motion, and reserving his rights thereunder, the bankrupt filed a response to the petition, and alleged that he had surrendered to the receiver all assets of every kind belonging to his estate. At the hearing on the petition the bankrupt was sworn and interrogated by the attorneys for the trustee. He was shown the transcript of his testimony given on his examination of November, 1910, and was asked if that testimony was true. He answered that it was. Thereupon the attorneys for the trustee offered said transcript as evidence on the hearing on the petition, to the introduction of which the bankrupt objected. The objection was overruled and the transcript was introduced, and the trustee rested. Thereupon the bankrupt was examined by his attorneys for the purpose of explaining his testimony given before the referee at his examination. The referee held that the bankrupt had in his possession or under his control the sum of $7,010.15 and that he withheld and concealed the same from the trustee. The bankrupt filed his petition for review, setting out four grounds therefor, as follows: (1) Error on the part of the referee in overruling the motion to require the trustee to make his petition more definite and certain. (2) Error on the part of the referee in admitting in evidence, over the objection of the bankrupt, the testimony given by the bankrupt in his examination. (3) Because the finding of the referee was contrary to the testimony. (4) Because the order of the referee was contrary to law.

In my opinion the motion to require the trustee to make his petition more definite and certain should have been sustained. In the examination of the bankrupt it was brought out that he had on the 5th of August, 1910, made to his creditors, or some of them, the following statement:

### Exhibit A.

E. B. Greer, Dealer in General Merchandise and Yellow Pine Lumber.

Fouke, Arkansas, 7/13, 1910.

Financial statement shown by E. B. Greer on June 1st, 1910, as per close estimate.

| | | |
|---|---:|---:|
| Amount of merchandise on hand at cost | $4,600 | 00 |
| Amount of notes and mortgages | 3,400 | 00 |
| Value of open accounts | 1,300 | 00 |
| Value of 2 sawmills, timbers and planer | 8,000 | 00 |
| Value of lumber on hand | 5,000 | 00 |
| Value of homestead | 1,500 | 00 |
| Value of other real estate | 1,400 | 00 |
| Value of real estate in Texas | 2,500 | 00 |
| Value of fixtures and personal property | 1,200 | 00 |
| Total assets | $28,900 | 00 |
| Owing for merchandise, due | $1,785 | 00 |
| Owing for merchandise not due | 400 | 00 |
| Owing for borrowed money | 3,700 | 00 |
| Owing on teams | 200 | 00 |
| Total liabilities | 6,085 | 00 |
| Total assets less liabilities | $22,815 | 00 |

189 F.—33

514                    189 FEDERAL REPORTER

It will be observed that this statement shows no cash on hand. On
November 8, 1910, the bankrupt was asked to furnish a statement of
his financial condition on the 5th of August, 1910. On the resumption
of his examination, on November 19, 1910, he was asked if he had the
statement, and he replied that the statement above quoted was a cor-
rect statement of his financial condition on that day. Taking this
statement as a basis, in connection with his schedules, he was examined
on behalf of the creditors, as follows:

"Q. Now, Mr. Greer, I want to get back on that account, now. You have
submitted this statement here as a statement of your condition on that date.
If this is not a true statement of your condition on that date, then you have
not complied with the order of the court here, and we will want that state-
ment if you are going to stand by it. A. I will stand by that statement as it
appears there. Q. Well, then, don't refer to it as being an estimate. Now
then, as I said a while ago, you had $22,815 more than you owed on the
5th day of August, 1910; that's correct, is it? A. Yes. sir. Q. On the 13th
day of October, 1910, you owed $4,930.76 more than you had. That's cor-
rect, is it? A. Yes, sir, but I didn't make the figures. Q. Now, I am going
to ask you now if you are familiar with the schedules that have been filed
herein—filed in this bankruptcy proceeding? A. Yes, sir. Q. And you have
sworn to these figures, and they are yours, are they not? A. Yes, sir. Q.
Now then, these schedules show that on the 13th day of October that you
owed $4,930.76 more than you had, and the schedules are correct, are they
not? A. Yes, sir. Q: If you owed $4,930.76 on October the 13th, more than
you had, then your net worth of $22,815 had been wiped out, hadn't it?
A. Yes, sir. Q. And on top of that you were $4,930.76 worse off. Now that's
correct, isn't it? A. Yes, sir. * * * Q. Now, on the 13th day of October,
instead of having more than you owed, you owed more than you had, didn't
you? A. Yes, sir. Q. Now then, you owed $12,432.31, and you had $7,501.55.
Now the difference would represent your net worth, plus or minus? A. Yes,
sir. Q. Now then, that difference is $4,930.76. Then you were worth at that
date $4,930.76 less than nothing, were you not? A. Yes, sir. According to
these figures. Q. Now, if you were worth $22,815 on the 5th day of August,
1910, over and above all your liabilities, and two months later you were
worth $4,930.76 less than nothing, then, if you wanted to ascertain the loss
in your business you would add those two items together? A. Yes, sir. Q.
That makes a total of $27,745.76 doesn't it? A. Yes, sir. Q. Then, according
to your testimony now, you are $27,745.76 worse off on the 13th day of
October than you were on the 5th day of August, 1910; that's correct, isn't
it? A. Yes, sir."

During the examination by attorneys for the creditors who after-
wards represented the trustee, it was assumed by them that on August
5, 1910, the bankrupt had property of the value of $22,815 above his
liabilities. The examination of the bankrupt was directed to the total
of the valuations set opposite the specific items of property in the state-
ment of August 5, 1910. The result was that the specific property
was lost sight of, and the bankrupt was involved in contradictions in
endeavoring to account for the property on the basis of the valuations
that he had put upon it in an effort to make a good showing to his
creditors. In response to the motion to make the petition more defi-
nite and certain, the record shows that one of the attorneys for the
trustee said:

"It is a physical impossibility for the trustee to be more definite and
certain in his allegations than he is, or allege that it is money or property.
Of course it would be more satisfactory if we could be more specific, but, as
before stated, that is a physical impossibility."

Just what is meant by the words "physical impossibility" is not clear. Physical impediments do not excuse indefiniteness in pleading. There is no logical connection between the two. Besides, the difficulty seems to have been psychical rather than physical. It was certainly physically possible to compare the statement of August 5, 1910, with the schedules filed by the bankrupt in October following, and thus see what articles in the statement were absent in the schedules if any such were absent. It was physically possible to introduce the schedules in testimony, so that the referee could make the comparison himself. But that was not done. The schedules are no part of the record in the hearing on the petition. The only testimony introduced by the trustee at the hearing on the petition was the transcript of the bankrupt's testimony taken at his examination on the 8th and 19th of November, 1910. It was certainly not a physical impossibility for the trustee to indicate what property it was that he maintained was still in possession of the bankrupt as shown by that testimony. Attorneys for the trustee in their brief point out the particular testimony of the bankrupt on which they rely to sustain the finding of the referee. That testimony discloses no more now than it did at the time the motion was made. That testimony was in existence then, and was introduced immediately after the motion was overruled. If it is physically possible now, by means of the testimony of the bankrupt, to designate the property still held by him, it was certainly possible then. The referee in his opinion presents two methods of computation by which it may be determined that the bankrupt has money or property in his possession which he should account for to the trustee. By one of these methods it is shown that the bankrupt has not satisfactorily accounted for $8,500. The opinion of the referee on that point is as follows:

"It appears from the testimony of the bankrupt that on or about the 13th day of July, 1910, just three months prior to the filing of the petition in bankruptcy, that said bankrupt owned and had in possession a large amount of property with a comparatively small amount of liabilities, leaving him with a net worth of substantially $22,815. At the date of the filing of the petition in bankruptcy his assets had dwindled down to $7,501.55, while his liabilities had increased to $12,466.07, making a total loss in business in the three months of $27,745.76. At the first meeting of creditors bankrupt was called upon for a statement of his financial condition on or about the 5th day of August, 1910, and also for a statement of the cash and merchandise expended by him on and after that date, and the meeting was adjourned for 10 days in order to give him time to obtain and furnish this data. At the adjourned meeting he submitted a statement of expenditures amounting to $12,995.99 that falls short of a satisfactory accounting, and, on the hearing herein, resubmitted said statement, and claimed additional expenditures as follows: $800 paid out, of which no record was kept; $2,500, the value placed on Texas real estate, which, according to his present account, proves to be worthless; and $3,000 loss on the Cox & Hudson account, making a total of $19,295.99, which, taken from $27,745.76, leaves a balance of $8,500, in round figures, for which no satisfactory account is given."

By the other method the referee finds that the bankrupt does not satisfactorily account for $7,010.15 which latter amount the bankrupt is by the referee ordered to pay to the trustee. This amount grows out of certain sales of lumber. The account given by the bankrupt of these sales is not clear. In support of the finding of the referee

reference is made to the testimony given by the bankrupt on his examination of November 8th. That portion of the testimony of the bankrupt was an attempt to account for the assumed shortage of $27,745.76, and was in answer to the following question by his attorney:

"Where was one of the largest leaks in the business—where did you lose a large amount of money?"

In answer to that question the bankrupt stated in substance that he had bought a large amount of lumber at a certain price and sold it at a less price, and that a large loss resulted from the transaction. It appears that a certain bank had made advances to the bankrupt, controlled the shipments and collected the proceeds of the sale. How much of the proceeds went into the hands of the bankrupt does not appear. It must be remembered that this testimony was taken on November 8th, almost a month before the petition was filed, in support of which it was introduced in evidence on December 12th. The object of the examination was to obtain an explanation of the bankrupt's business, and to ascertain whether he had assets other than those listed in his schedules. The petition should have made definite allegations, so that the bankrupt might know what he was called upon to produce. In no other way could he know what it was that was demanded of him, or account for its absence.

[2] The transcript of the testimony of the bankrupt, or such part of it as tended to prove the allegations in the petition, was admissible, In re Wilcox, 109 Fed. 628, 48 C. C. A. 567. It may be that the bankrupt still has in his hands proceeds of the sale of lumber, and that this may be made to appear from proof based upon specific allegations to that effect. If the order of the referee in this case were sustained and should not be complied with, the only method of enforcing it would be by imprisonment for contempt. The bankrupt should not be ordered to do something that he cannot do. The testimony does not satisfy me that he can comply with the order of the referee. That order is therefore reversed, and the matter is remitted to the referee, with directions to sustain the motion of the bankrupt to make the petition of the trustee more definite and certain, and for further proceedings in conformity herewith.