LUDWIG J. KNOOP

*v.*

LOUIS J. BOHMRICH et al.

1. A stockholder may bring a suit in equity in his own name to enforce a right of the corporation, without first requesting the directors to sue, when it is made to appear that if such request had been made it would have been refused, or, if granted, that the litigation following would necessarily be subject to the control of persons opposed to its success.

2. Where the directors of a corporation are themselves the wrong-doers, or the partizans of the wrong-doer, they are incapacitated from acting as the

representatives of the corporation in any litigation which may be instituted for the correction of the wrong which it is alleged they have committed or approve.

3. Where one stockholder agrees with another, at the formation of a corporation, that the other may pay for his stock with .property, at a valuation agreed upon by them, and afterwards consents to the issue of stock in execution of the contract, though the corporation is not bound by their contract, the consenting stockholder will be held to be bound by it to the extent of depriving him of the right to maintain an action to compel the other stockholder to pay for his stock in a manner different from that agreed upon.

On final hearing on bill, answer and proofs.

*Mr. James A. Gordon*, for the complainant.

*Mr. John W. Bissell*, for the defendants.

Van Fleet, V. C.

The complainant is the owner of fifty shares of the capital stock of the Saxonian Manufacturing Company. The defendants are Louis J. Bohmrich, Max Brand and the Saxonian Manufacturing Company. Bohmrich is the president of the defendant corporation and Brand is secretary and treasurer. The corporation was organized on the 11th day of June, 1890, under a general statute of this state, with a capital of $20,000, divided into two hundred shares of $100 each. No subscriptions to the stock were made, but two days after the organization certificates for the whole number of shares were issued. Fifty shares were issued to the complainant, for which he paid $5,000 in cash; forty-eight shares were issued to the complainant's wife, for which she gave her note, payable on demand, which the corporation still holds; fifty shares were issued to the wife of Bohmrich, for which she also gave her note, which is still held by the corporation; and one share was issued to Brand, for which he also gave his note. The fifty-one remaining shares were issued to Bohmrich. He paid nothing for them in money, nor did he, at the time of their issue, make a written transfer of any property for them, nor has he since. The complainant says that he has not paid for them in any way, but that they

Knoop v. Bohmrich.

were issued on his promise to pay for them in money. This suit is brought to compel Bohmrich to pay into the treasury of the corporation the par value of the shares issued to him.

The complainant's right to maintain this suit is disputed. The contract, which he is asking to have enforced, was made by Bohmrich with the corporation, and hence, it is said, that nobody but the corporation can maintain an action on it. That would unquestionably be so if it did not appear that the corporation is under the control of managers who cannot bring a suit, in the name of the corporation, for the purpose for which this suit is brought without accusing one of their number, and he their chief, of an attempt to defraud the corporation. If they could be induced to consent to sue, it is manifest that their bias would constrain them to so conduct its prosecution as to insure defeat rather than success. When the complainant first insisted that Bohmrich should pay for the stock issued to him, and also when he instituted this suit, Bohmrich and his wife, Brand and the complainant and his wife were the directors of the corporation. Brand is the partizan of Bohmrich. He was a witness for him, and gave substantially the same account respecting the means by which Bohmrich acquired his stock that Bohmrich himself did. It may be safely assumed, without proof, that Bohmrich's wife would not have voted that a suit should be brought to compel him to pay for his stock. She would, undoubtedly, have insisted, as he does now, that the corporation had no right of action against him, and that if a suit should be brought it would result in nothing but a useless expenditure of money. So that it is obvious that, had the complainant, before bringing this suit, requested the directors to sue, for the same cause of action, his request would have been denied by a vote of three to two. Bohmrich and his partizans had control of the corporation—they held one hundred and two of the two hundred shares of stock, and had three votes out of the five in the board of directors. In this condition of affairs the complainant was under no duty, before bringing his suit, to ask the directors to sue in the name of the corporation. The rule is settled that such application need not be made when the interest or bias of the managers of the

Knoop v. Bohmrich.

corporation makes it certain that, if it was made, it would be denied, or, if granted, that the litigation following would necessarily be under the control of persons opposed to its success. *Ackerman* v. *Halsey, 10 Stew. Eq. 356, 362; S. C. on appeal, 11 Stew. Eq. 501; Brinckerhoff* v. *Bostwick, 88 N. Y. 52, 59; Peabody* v. *Flint, 6 Allen 52, 56; Brewer* v. *Boston Theatre, 104· Mass. 378, 387; Mor. Corp. § 242.* Nothing can be much more certain than that justice will not be done in any case where the person against whom redress is sought by suit is in a position where he has power to control both sides of the litgation—to act both as plaintiff and defendant. The reason of the rule, which controls in cases like the one under consideration, was stated by Judge Rapallo, in *Brinckerhoff* v. *Bostwick, supra,* in this wise: "In such cases [that is, where the managers are the wrong-doers and must. be made defendants in the suit] a demand ·upon the corporation to bring the suit would be manifestly futile. A suit prosecuted under the direction and control of the very parties against whom the misconduct is alleged, and· a recovery is sought, would scarcely afford to the shareholders the remedy to which they are entitled, and the fact that the delinquent parties are still in control of the corporation is, of itself, sufficient to entitle the shareholders to sue in their own names. If they could not be permitted in such cases to assert their rights in their own names, the directors, so long as they remained in office, could set them at defiance." And where, as in this case, the directors opposed to suing hold a majority of the stock, they would have it in their power, if a stockholder could not sue in his own name, to defeat justice absolutely and forever. Where the directors are themselves the wrong-doers, or a majority of them are the partizans of the wrong-doer, they are, in the language of the supreme court of Massachusetts, in *Brewer* v. *Boston Theatre, supra,* by the very nature of the case, incapacitated for the service of representing the corporation in an action against the wrong-doers. To say that no redress can be had in such a case except by a suit in the name of the corporation, prosecuted by its managers, would amount to a plain denial of· justice to the injured stockholders.

There can be no doubt, therefore, that the complainant has a clear right, on the facts stated, to maintain this action.

Bohmrich does not pretend that he has paid for his stock with money, nor that he has made a written transfer of property to the corporation in payment of it. His certificate is not stamped, as the statute says certificates of stock issued in payment for property purchased shall be. *Rev. 187 § 55.* It does not declare upon its face that the stock, for which it was issued, had been paid for by property and not by money. Nor does Bohmrich pretend that the corporation agreed with him that he might pay for his stock with property as distinguished from money. It is admitted that the corporation did not agree, by a vote of its directors, or in any other way, that he might pay for his stock with property. There was no corporate action on the subject, and, so far as appears, the question, as to whether or not he should have the right to pay for his stock in a manner different from the other stockholders, was never suggested or mentioned in the presence of either the directors or stockholders. These are matters about which there is no dispute. Bohmrich rests his right, as against the complainant, to the stock he holds on this ground: he says, prior to the formation of the corporation, and also on the day the corporation was formed, it was agreed between the complainant and himself, that he should transfer to the corporation a business in which he was then engaged, together with the machinery used in such business, his stock on hand, fixtures, books of account and the lease of the premises where the business was carried on, and that in payment of such transfer fifty-one shares of stock were to be issued to him. He further says, that the stock he holds was issued to him in execution of this contract, with the knowledge and approval of the complainant. If this claim is true, it would seem to be quite clear that the complainant is not entitled to the decree he seeks. Though the corporation may not be bound by this contract, still it would seem to be unquestionably just, that the complainant should be held to be bound by it to the extent of depriving him of the right to maintain an action in equity to compel Bohmrich to pay for his stock in a manner entirely different from that agreed upon; especially

should this be so, if it be true, as alleged, that the complainant was present when the stock was issued and consented to its issue in execution of the contract. The question, then, on this branch of the case is, was such contract made? On this issue the burden is on Bohmrich. As it stands admitted that no money was paid for the fifty-one shares, and as the certificate for those shares does not show on its face, as the statute requires, that it was issued in payment of property purchased, the law will, under such a state of facts, presume, until the fact is shown to be otherwise, that the stock has not been paid for.

The corporation was organized to manufacture and sell dress and cloak trimmings. Bohmrich had carried on this business, prior to the organization of the corporation, under the same name adopted by the corporation. He commenced business in March, 1890, and the corporation was formed in June following. Prior to March, 1890, Bohmrich had never manufactured or sold trimmings, and knew nothing about the business. While he carried on the business he admits that he lost money. His sales amounted to less than $200. He says he had invested in the business, when the corporation was formed, about $1,660, including the sums he had paid for wages and rent. The person who purchased for him the machinery, utensils and stock he had on hand when the corporation was formed, says that his outlay for those purposes was less than $800. Bohmrich does not claim that the property he was to transfer to the corporation, under his arrangement with the complainant in payment of the fifty-one shares of stock, was worth $5,100; he, on the contrary, admits that it was worth only about $1,660, but says that the difference between the last named sum and the value of the stock was made up of the value of his time in establishing the business, of a lease of the premises where the business was carried on, and the good will of the business; in other words, that he was to be paid for his time, the lease and good will over $3,400. But he does not say that any of these things, except the lease, was ever mentioned or alluded to in any conversation between the complainant and himself. He does not claim that the complainant ever agreed or consented that he should be paid for his

time, or the lease or good will. At the time when the corporation was formed he had not succeeded in establishing a business. His sales amounted to less than $200—not sufficient to be called a business—so that in fact he had neither a business nor a good will. It is plain that no man with discernment enough to see the difference between something and nothing would ever, understandingly, have consented that another should be paid, in part at his cost, either for founding such a business, or for the good will of such a business. Bohmrich does not pretend that, in any of their negotiations, he intimated to the complainant that he wanted the corporation to pay him for his time while he was attempting to establish the business, or for the good will of the business. His description of what was said when the contract, on which his defence rests was made, is this: he says, that he said to the complainant: "You put in $5,000, and I will give the business, plant, machinery, stock, lease and everything with which I do business for a controlling interest in the company," and that thereupon the complainant at once agreed to his terms. Brand says on the day the certificate of incorporation was drawn, Bohmrich stated, in the hearing of the complainant, that the complainant was to pay $5,000 for fifty shares of stock, and that he (Bohmrich) "should get shares to the amount of $5,100 for selling his machinery, stock and business," and that, although the complainant heard this statement, he in no way expressed dissent or disagreement. Neither, it will be observed, pretends that on either occasion was anything said which indicated, in the most distant way, that any stock was to be issued to Bohmrich to pay him for his time in establishing the business, or for the good will of the business. I do not believe that such a thing was, on either occasion, in the mind of either party. At any rate, I feel quite sure that, had such a thing been suggested on either occasion, the complainant would at once have refused to put down his $5,000. The complainant denies that he ever consented in any way that Bohmrich might pay for his stock with property. He denies that such a method of payment was ever suggested to him, or in his presence, but says, on the contrary, that at the time when it was first agreed that a corporation

should be formed, as well as in all subsequent interviews, it was distinctly understood that Bohmrich and he were each to contribute $5,000 towards the capital of the corporation, by taking stock to that amount and paying for it in cash. He also says that he did agree that Bohmrich might take a sufficient number of shares of stock to give him the control of the corporation, but that he did not agree that Bohmrich might pay for his stock, or any part of it, with anything but money. He further says that he took it for granted that the corporation would take Bohmrich's machinery and utensils at cost, and pay him for them, and that he so assumed, not because anything to that effect had been said, but because it was a just thing to do under the circumstances. The complainant's wife swears that Bohmrich told her, before the formation of the corporation, that her husband and he were each to contribute $5,000 towards the capital of the corporation, and that, although she was one of the founders of the corporation, and also one of its directors, she never heard that it had been proposed that Bohmrich should have the right to pay for his stock with property. She also says that she has never been asked to consent, and never has consented, that the corporation should purchase Bohmrich's property. Another person swears that he had a conversation with Bohmrich about the 1st of June, 1890, in which Bohmrich said that he was engaged in manufacturing trimmings; that it was a good paying business, and he wanted the complainant to go into partnership with him and put in $5,000; that if the complainant would put that amount in he would put in the same amount. This witness resided in the same house with the complainant and his wife, and says that he heard several conversations between Bohmrich and the complainant about engaging in business together, and that he understood from their conversations that they were each to contribute the same amount of capital. Another person, who was present at the first meeting of the stockholders, and who, although not a stockholder, was elected a director, swears that he was present all the time, both at the meeting of the stockholders, and also at that of the directors, and that nothing was said at either respecting the purchase of Bohmrich's property by the corporation, or

that he should have the right to pay for his stock with property, and that he never heard, until September, 1890, that Bohmrich claimed to have sold his property to the corporation.

This is the way the proofs stand on the point in controversy. They fail to convince me that such a contract as that on which the defence rests was made. On the contrary, there is, in my judgment, very strong proof inherent in the negotiations between Bohmrich and the complainant, as Bohmrich himself describes them, tending to show that no such contract was made. The complainant took fifty shares of stock and paid $5,000 in cash. Bohmrich at the same time took fifty-one shares and paid for them with property, worth, according to his own valuation, less than $1,700, and this, he says, he did with the consent and approval of the complainant. And yet he admits that, during his negotiations with the complainant, the complainant did not ask, and he did not tell him, what the machinery had cost, nor what it was worth, nor how much money he had invested in the business. He says that nothing at all was said on either of these subjects. If Bohmrich's evidence is true, the complainant consented that Bohmrich should receive $5,100 in stock for his property, without inquiry either as to the cost or value of his property, although, as part of the same transaction, it was understood that the complainant would put down, as the equivalent of Bohmrich's property, $5,000 in cash. Not only so, but it appears from Bohmrich's evidence that the complainant gave such consent with full knowledge, derived from Bohmrich himself, that the property, which was to be transferred to the corporation, was not worth $4,000. Shortly prior to the formation of the corporation Bohmrich says that he requested the complainant to have the property, which he used in his business, insured for $4,000, and that the complainant subsequently reported that the agent to whom he had applied objected to the risk on the ground that the property was not worth that sum. And Bohmrich says, on receiving this report, he said to the complainant that he knew that he did not have that amount of property in his factory, but it "was apt to be there." Now, it may be that the complainant made the contract alleged without

Knoop v. Bohmrich.

inquiry as to the value of the property, or even with full knowl-
edge that the property was worth much less than the face value
of the stock, still it is so improbable that any man, possessing
ordinary sense and a reasonable degree of selfishness, would do
such a thing, that it seems to me that it should not be believed
that he has except upon very convincing proof. The proof in
this case is not of that kind. Moreover, it is my duty to say
that I am very decidedly of opinion that if such a contract had
been made, or if Bohmrich believed, when the stockholders met
to organize the corporation, that it had been made, he would have
so stated, in order that other stockholders might know that his
stock would not be paid for with money but property. His
failure to make such an announcement furnishes very strong
evidence, as I think, that no contract had been made. If he
believed that such a contract had been made, its publication at
that time was obviously a thing of such vital importance to him,
as well as to the other stockholders, that I can imagine no con-
dition of circumstances likely to induce him to suppose that it
would be either safe or politic for him to withhold all informa-
tion concerning it. Both his interest and his duty required him
to disclose the fact that such a contract had been made. In this
situation, the fact that he made no disclosure goes very far in
demonstrating that he had nothing to disclose.

The complainant is entitled to a decree requiring Bohmrich to
pay the corporation for his stock. Whether he is entitled to
credit for the value of his property, which the corporation has
used since its organization, is a question which was not discussed
on the argument, and has, consequently, not been considered. It
must, however, be decided before a decree is made.

The complainant is entitled to costs.