(44 Misc. Rep. 567.)

### UNITED GOLD & PLATINUM MINES CO. v. SMITH.

(Supreme Court, Special Term, New York County. August, 1904.)

1. CORPORATIONS—COMPENSATION OF DIRECTORS—RESOLUTION—VALIDITY.

   The A. and B. Mining Companies consolidated and formed the C. Mining Company. Defendant at the time held a majority of the capital stock of each of the consolidating companies as trustee for the stockholders, and voted it, together with other stock owned by him individually, and also stock of persons for whom he held proxies in favor of the consolidation. The stockholders of the A. Company approved the merger, and passed a resolution for the issuance of certain stock held for treasury purposes to defendant in consideration of his services. The passage of the resolution was obtained by the controlling vote of defendant while such director, trustee, and proxy, and his vote was necessary for its passage. *Held,* that the resolution could not be sustained, it being passed for the personal benefit of defendant by his controlling vote.

2. SAME—MEETING OF STOCKHOLDERS—NOTICE.

   Where a meeting of a corporation was called to consider a plan of amalgamating the interests of such corporation with that of another mining

corporation, and for such other business in relation thereto, as well as the general business of the company, as might be presented to the meeting, the notice was insufficient to give the stockholders any intimation that a resolution would be passed issuing to a director certain stock as compensation for services rendered the company.

3. SAME—CONSOLIDATION—DIRECTORS—COMPENSATION.

Where the A. and B. Mining Companies were consolidated in the C. Mining Company, and a resolution was passed by the A. Company providing for issuance of stock of said company to defendant, a director, for services rendered, it did not authorize the issue of stock in the consolidated company to such director, where there was no provision for such issue in the consolidation agreement, and there was no ratification of it by any subsequent meeting of the stockholders of the consolidated company.

4. SAME—RESOLUTION—CONSTRUCTION.

The A. and B. Mining Companies were consolidated in the C. Mining Company. At a meeting of the directors of the A. Company held after the consolidation a resolution was adopted authorizing issue of notes of the company, each note carrying a bonus of 500 shares of the company's stock. After 12 of these had been sold, and while 8 were in possession of the company, the executive committee of the consolidated company authorized the substitution of its notes in renewal of the notes of the A. Company, which had matured, and attached an additional bonus of 500 shares of stock to each of the notes, making the total bonus with each note 1,000 shares of the consolidated company. Nine months thereafter the directors of the consolidated company passed a resolution reciting an indebtedness due defendant from the A. Company and the consolidated company, and providing that notes of the consolidated company should be made payable to defendant's order to cover such indebtedness, each note to be accompanied by a certificate of 500 shares of the consolidated company; the notes to be similar to those theretofore issued by the A. Company. Such notes were never issued, but defendant took over to himself the eight original notes of the A. Company. *Held*, that the consolidated company was the owner of said notes and of the shares of its stock attached as a bonus, and that said notes were issued to raise money to meet the obligations of the A. Company, and not to pay any indebtedness to the defendant, and did not pass to him by such resolution, which referred solely to notes of the consolidated company.

Action by the United Gold & Platinum Mines Company against Charles E. W. Smith. Judgment for plaintiff.

See 88 N. Y. Supp. 67.

Hardy & Shellabarger, for plaintiff.

H. D. Luce (John J. Adams, of counsel), for defendant.

BLANCHARD, J. The facts of this case are as follows: The plaintiff is an Arizona corporation, and was formed out of the consolidation or merger of two pre-existing Arizona corporations, viz., the American Gold & Platinum Mines Company (which will be referred to as the "American Company") and the Consolidated Gold & Copper Mines Company (which will be referred to as the "Consolidated Company"). The defendant, Smith, at the time of the merger held, as trustee for the stockholders of the constituent companies, the majority of the capital stock, with the right to vote upon said stock, and he thus had the controlling interest in the management of the affairs of the constituent companies. The merger agreement was approved by the American Company at a special meeting of the stockholders held May 12, 1902. At this

meeting 736,200 shares were voted upon out of a total capitalization of 1,000,000 shares, and of the shares voted 665,190 shares were voted by the defendant Smith as follows: 501,000 shares held by him as general trustee for all the stockholders, 114,960 shares owned by him individually, and 50,230 shares voted on by him as proxy for other stockholders. The Consolidated Company approved this merger agreement at a stockholders' meeting held April 18, 1902, at which meeting 946 shares were voted upon by the defendant, Smith, out of a total capitalization of 1,000 shares, as follows: 501 shares held by him as general trustee for all the stockholders, 123 shares owned by him individually, and 322 shares voted on by him as proxy for other stockholders. It is conceded that the merger agreement was passed upon and approved by the stockholders of both constituent companies. This agreement provided for the acquisition by the plaintiff company of the property and assets of the constituent companies, and payment therefor by the issue of stock of the plaintiff to the stockholders of the constituent companies on a pro rata basis. It contains the following provisions which affect particularly the issues in this action:

"Five million and ten thousand dollars ($5,010,000) of the common stock of the United Company shall be issued to Charles E. W. Smith, trustee, in payment for five million and ten thousand dollars ($5,010,000) of the common stock of the American Company now held by him as trustee. The stock of the United Company appropriated for the purchase of the properties of the Consolidated Company shall be issued in the following manner: Five million and ten thousand dollars ($5,010,000) will be issued to Charles E. W. Smith, trustee, in payment for five hundred and one (501) shares now held by him of the Consolidated Company. One million two hundred and forty-five thousand dollars ($1,245,000) common stock and one million and fifty thousand dollars ($1,050,000) preferred stock shall also be issued to Charles E. W. Smith, trustee, for the treasury purposes of the said United Company. The ten million and twenty thousand dollars ($10,020,000) of common stock of the United Company to be received by Charles E. W. Smith, as trustee, under the above stated provisions, shall be held by him to be used for the purposes of the treasury of said United Company, or, if he shall in his discretion determine otherwise then for such other use in the interest of said United Company or of its stockholders, as he may in his absolute discretion deem to be the best."

In the minutes of this meeting of the stockholders of the American Company held May 12, 1902, the following resolution appears:

"Whereas, this company is indebted to Chas. E. W. Smith for valuable services rendered from time to time in the way of negotiating and providing financial aid for the company; and whereas, this corporation is indebted to Chas. E. W. Smith in the sum of about $25,000 for cash advanced; and whereas, the said corporation recognizes the value of the services rendered by said Chas. E. W. Smith in providing financial aid in the manner aforesaid; and whereas, this corporation desires that the said Chas. E. W. Smith shall carry for the company the said indebtedness up to the 1st of July, 1902; and whereas, the said company is desirous that the said Chas. E. W. Smith shall continue to take care of the company's affairs as he has heretofore done: Now, therefore, be it resolved, that in consideration of all the aforesaid, we, the stockholders of this company, in meeting assembled, and representing personally and by proxy a large majority of the issued stock of the company, do hereby recommend and instruct that the board of directors of this company cause the proper officers of the company to issue and to deliver to the said Chas. E. W. Smith 250 rights to the capital of the American Gold and Platinum Mines Company, the said 250 rights being equivalent to $1,250,000 of common stock and $50,000 of preferred stock. said 250 rights to be issued out of the stock

set aside for treasury purposes; and it is further resolved, that the said approximate amount of $25,000 in cash heretofore mentioned as being an indebtedness held by the said Chas. E. W. Smith against this company, and any advances of cash which the said Chas. E. W. Smith may make hereafter for the benefit of this company in carrying out the plans for the development of the company's property, should be repaid to him out of the first money received in the treasury of the company by sales of treasury stock of the company. Upon motion duly made, seconded and carried, the foregoing resolution was adopted."

The stock called for by the resolution was not issued to the defendant by the American Company, but after the plaintiff company was organized 130,000 shares of its stock were issued to him as the equivalent of the stock of the American Company, to which he claimed to be entitled by virtue of said resolution. The plaintiff, in its first cause of action, claims that this issue of stock to the defendant was invalid, and seeks to have it set aside, and demands that the defendant be decreed to retransfer and return the stock to · its treasury. The plaintiff is entitled to this relief. The resolution of the American Company, by virtue of which this stock was issued to the defendant, cannot be sustained, because it was passed for the personal benefit and advantage of the defendant by the controlling vote of the defendant himself while he was a director and officer of the company and trustee and proxy for nearly all of the stockholders. The defendant states in his testimony that he did not vote on this resolution. The minutes show that he was present at the meeting, and in control thereof, and there is no minute to the effect that he did not vote. If it is true that he did not vote, then, without his vote, there would not have been sufficient votes left to pass the resolution. This meeting of stockholders at which this resolution was adopted was a special meeting, and the notice thereof sent to the stockholders stated that it was "for the purpose of considering a plan of amalgamating the interests of properties of this company [the American Company] with that of the Consolidated Gold and Copper Mines Company, and for· such other business in relation thereto, as well as the general business of the company, as may be presented to the meeting." I do not think that any reasonable construction of this notice would give any intimation to the stockholders that such a resolution as the one in question would come before the meeting. As the defendant controlled the corporation, it would seem but fair that he should have given specific notice of such an important matter as was involved in this resolution before introducing it to the meeting. It certainly was not in relation to the "general business" of the company that this resolution was introduced. Its general business was not to vote a large block of its stock to one of its own officers. That was particular and unusual business. This issue of stock to the defendant was not authorized by any of the terms of the merger agreement, nor was it ratified at any subsequent meeting by the stockholders of either of the constituent companies or of the plaintiff. It should, therefore, be set aside. Duncomb v. N. Y., H. & N. R. Co., 84 N. Y. 190; Central Trust Co. v. N. Y. City & N. R. R. Co., 18 Abb. N. C. 381; U. S. Ice & Refrigerating Co. v. Reed, 2 How. Prac.

(N. S.) 253; Welch v. Importers & T. N. Bank, 122 N. Y. 177, 25 N. E. 269.

In respect to the plaintiff's second cause of action the following appear to be the material facts: On June 16, 1902, a resolution adopted at a meeting of the directors of the American Company authorized the issuing of 20 notes of the company for $1,000 each, to run from four to six months each, each note to carry as a bonus 500 shares of the company's stock. The purpose of these notes was to raise money thereon to meet the "urgent need of funds to meet obligations incurred from day to day in the prosecution of its work at its mines in Arizona and to meet other necessary expenses." Twelve of these notes were negotiated, leaving eight of them still in the possession of the company. On January 3, 1903, the executive committee of the plaintiff company passed a resolution authorizing the substitution of its notes in renewal of, or in place of, these 20 notes of the American Company, which had then matured, and also attaching an additional bonus of 500 shares of its stock to each of the notes, so that the total bonus with each would be 1,000 shares of the plaintiff's stock. On September 13, 1902, a resolution was adopted by the board of directors of the plaintiff as follows:

"Whereas, there is a balance due Mr. Charles E. W. Smith for advances made on behalf of the American Gold and Platinum Mines Company and the Consolidated Gold and Copper Mines Company from time to time, and it is the desire of the A. G. & P. M. Co. and the Con. G. & C. M. Co. to liquidate such indebtedness: Resolved, that notes of $1,000 each, dated the twenty-sixth day of June, and payable six months after date, shall be made payable to the order of Charles E. W. Smith to cover said indebtedness, each note to be accompanied by a certificate of 500 shares of the preferred stock of the United Gold and Platinum Mines Company; * * * said notes to be similar to the notes heretofore issued by the A. G. & P. M. Co."

It does not appear that the notes of the plaintiff called for by this resolution of September 13th were issued to the defendant, but it does appear that he took over to himself at some time eight of the original notes of the American Company. The plaintiff now claims to be the owner of these eight notes, or of the renewals thereof by the plaintiff company, and of the shares of the stock of the plaintiff attached thereto as a bonus, as provided by the resolutions above set forth. I find nothing in the record to sustain the defendant's claim of ownership of these eight notes, or renewals thereof, and of the shares of bonus stock. The only authority shown for the issuing of the notes and bonus stock is contained in the resolution of the American Company of June 16, 1902, and of the plaintiff's executive committee, January 3, 1903. The notes were issued for the purpose of raising money to meet the daily financial obligations of the American Company, not for paying an indebtedness owing to the defendant. The resolution of September 13, 1902, did not entitle the defendant to any of the notes created for a special purpose by the resolution of the directors of the American Company adopted June 16, 1902. The resolution of September 13th related to notes of the plaintiff company, and not to the original notes of the American Company, or to the renewals thereof.

The evidence in this case convinces me that the defendant's conduct in respect to the affairs of the companies involved in this controversy has not been actuated by any wrongful motive. It is clear that he, more than any one else, has given much of his time and labor to the building up of the plaintiff corporation and its constituent companies. Such has been his position as their most active and trusted manager and officer that it is perhaps only natural that he should have grown to believe that they should cheerfully allow him to have a controlling interest in all their affairs and in their respective properties. While he may be right in this belief, the methods adopted to carry it into effect have not been such as the law will sanction. The defendant has lost sight of the fact that as an officer and director he is bound by the strict rules of conduct laid down by the law in its wisdom for the guidance of a trustee and for the sure protection of the cestui que trust. Judgment for the plaintiff.

Judgment for plaintiff.