### In re YOUROVETA HOME & FOREIGN TRADE CO., Inc.

(Circuit Court of Appeals, Second Circuit.   March 3, 1924.)

#### No. 216.

1. Bankruptcy ⟶340—Claimant against estate has burden of proof.
   The burden of proof to establish a claim against an estate rests on the claimant, and an objection by the trustee need not be supported by evidence, unless the sworn proof of claim makes a prima facie case.

2. Bankruptcy ⟶340—Unliquidated claim must be liquidated before allowance.
   Where a claim in its face is unliquidated, it is the duty of claimant, before it can be allowed to liquidate it, by making a showing as to consideration sufficiently full and explicit, to enable other creditors to investigate as to its fairness, legality, and amount.

3. Bankruptcy ⟶341—Claim may not be allowed for larger sum than claimed.
   It is error to allow a claim for a substantially larger sum than that stated in the claim, of which excess amount other creditors have had no notice.

4. Bankruptcy ⟶340—Allegations in proof of claim cannot be used to supplement testimony offered to support them.
   Where a claimant has attempted to establish the allegations in his proof of claim by evidence, he cannot be permitted to use those very allegations to supply a deficiency in his testimony.

5. Evidence ⟶186(1)—Service of notice to produce evidence authorizes use of competent secondary evidence only.
   The service of a notice to produce evidence permits only the use of secondary evidence in relation to the matters covered by the notice, and does not excuse the introduction or allowance of immaterial, irrelevant, incompetent, or impertinent evidence.

---

⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Witnesses ⊚⇒234—Trustee in bankruptcy held entitled to examine claimant fully respecting claim.**

Where the transactions out of which a claim arose occurred in foreign countries, and claimant is the only available witness who has knowledge of them, the trustee in bankruptcy is entitled to examine him fully, and to require him to produce or account for material documents which should be in his possession.

**7. Bankruptcy ⊚⇒340—Allowance of claim held not justified by the evidence.**

A claim against a bankrupt corporation for conversion of a large quantity of goods, and conversion or embezzlement of the proceeds of other goods, *held* improperly allowed, where claimant's sole testimony as to the conversion was denied, and there was a total failure to prove damages with reasonable certainty.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Youroveta Home & Foreign Trade Company, Inc., bankrupt. From an order allowing the claim of Mark L. Friedman, John N. Boyle, trustee, appeals. Reversed and remanded, with directions.

See, also, 288 Fed. 507.

Appeal from an order in bankruptcy entered in the District Court for the Southern District of New York confirming the action of a referee, who had allowed against the above estate claim of Mark L. Friedman in the sum of $2,000,000. Friedman's proof of claim set forth that he had demands against the bankrupt, first, in respect of certain woolens; and, second, certain "Hessian flour bags."

In and probably before 1916 there existed in Russia a company or joint-stock association in name somewhat resembling the bankrupt. This will be referred to as the Russian company. The bankrupt herein was organized under the laws of New York in March, 1918, and it is admitted that the object of creating this concern was to take over the business and manage the assets of the Russian company, in order to prevent the same from being commandeered, confiscated, or made away with by one or another of the "governments" then functioning in Eastern Siberia.

Friedman's proof sets forth substantially as above the formation of the bankrupt. In respect of the woolens he then shows that in June, 1916, he bought a very large quantity of woolens in England, and arranged to have them delivered to the care of the Russian company at Vladivostok. The business scheme is said to have been that the Russian company would receive the goods, advance the moneys necessary to market them, and receive interest on the moneys so advanced and a commission of 1 per cent. It is then said that the transaction of this business became practically impossible at some time subsequent to the spring of 1917, whereupon Friedman says he instructed the Russian company to make no disposition whatever of such merchandise without positive instructions from him. It is then asserted that the bankrupt received by transfer from the Russian company all of Friedman's woolens which had not been already disposed of, and then and thereafter "willfully and fraudulently failed and refused to render any statement as to the disposition of" said merchandise, all to the damage of Friedman in a "sum of not less than $750,000."

As to the Hessian bags, the proof of claim asserts that in June, 1918, Friedman had in various parts of Sweden bags worth $265,000, which he authorized the bankrupt to sell; the bankrupt did sell, and received said $265,000, which it had refused to pay over. In conclusion, he declared that the bankrupt was indebted to him in a sum which he "estimated approximately to be $1,000,000."

The substance of the trustee's objection to the claim is that "the claimant did not furnish to the bankrupt any goods, wares or merchandise, nor advance any moneys, nor, has the bankrupt received any money or property of

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the claimant." In addition, the trustee set up a release from Friedman, which will be considered in the opinion. From the allowance of the claim the trustee appealed.

David W. Kahn, of New York City, for appellant.
Robert C. Birkhahn, of New York City, for respondent.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The common statement of the rule in matters like this is that, under Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 584, a sworn proof of claim puts the "burden of proof" on the objecting trustee. This is not an accurate statement, for, as Holmes, J., remarked in the case cited, the question is—

"whether the sworn proof of claim is prima facie evidence of its allegations in case it is objected to. It is not a question of the burden of proof in a technical sense, a burden which does not change, whatever the state of the evidence, but * * * whether the sworn proof is evidence at all." Pages 534, 535 (26 Sup. Ct. 317).

Furthermore, it is always necessary to remember the difference between the proof of a claim and its allowance. In re Hornstein (D. C.) 122 Fed. 266. And the question here is whether, upon all the evidence produced, the claim was properly allowed for the sum fixed.

[2] In this instance both parties seem to have overlooked the fact that the claim on its face was unliquidated. In re Menzin, 238 Fed. 773, 151 C. C. A. 623. Consequently it was the duty of claimant affirmatively to liquidate his claim; i. e., to make a showing as to consideration sufficiently full and explicit to enable other creditors to investigate as to the fairness and legality thereof. Orr v. Park, 183 Fed. 683, 106 C. C. A. 33. And the amount for which the claim is allowed is, to say the least, a vital part of it.

[3] We first observe, therefore, that without amendment there was no justification for allowing a claim filed substantially for $1,000,000 at the sum of $2,000,000. It might have been that other creditors, after examining the referee's files, would have agreed to an allowance at $1,000,000. Such allowance might have been made on the claim alone, if it had been liquidated; but it is a sufficient condemnation of the practice here pursued that the claim might thus have been allowed for twice what the claimant originally demanded without notice to any other creditor. It was error to allow the claim in the larger sum.

[4] Again, in this instance, while Friedman rested upon his claim under the doctrine of the Dresser Case in limine, he did not adhere to that position, and, as this court remarked in Re McIntyre, 174 Fed. 627, 98 C. C. A. 381:

"Having * * * attempted to establish the allegations in his proof of claim, he cannot be permitted to use those very allegations to supply the deficiencies in his testimony. A proof of claim may have some probative force; but it certainly should not be regarded as self-proving, unless relied upon."

Turning, now, to the whole evidence, an officer of the bankrupt categorically denied that Friedman had any goods whatever at any

time with the bankrupt company, while claimant himself admitted that all his dealings had been with the Russian company. It appears to us as fairly clear that the relations between the Russian and New York companies were that the former used the latter as a means for marketing its own goods, including, it may be admitted, the goods of Friedman, solely in order to procure for that business the protection of its American origin, in a country so troubled by insurrections, if not revolutions, that it is uncontradicted on this record that some $400,-000 worth of goods were confiscated, commandeered, or otherwise appropriated by representatives of the army operating under General Semenoff—a point to which this court was introduced before in a previous appeal in this bankruptcy. In re Youroveta, etc., Co., Semenoff, Petitioner, 288 Fed. 507; opinion filed January 29, 1923.

[5] In order to establish some connection tending to substantiate the allegations of the proof of claim, reliance seems to have been placed very largely upon the effect of a "notice to produce," served upon the attorney for the trustee, and requiring the trustee to furnish "all books, papers, correspondence, and other records of the bankrupt pertaining to the account and dealings with Mark L. Friedman." This notice was offered in evidence, and thereafter claimant seems to have been permitted to offer under the name of evidence any statement, admission, or paper document which in his judgment, or that of his counsel, tended to substantiate his demand.

Such is not the effect of a notice to produce. The only effect of such notice is to permit the use of secondary evidence in relation to the matters covered by the notice. Secondary evidence means something which is not original. Wigmore, § 1202 et seq. The serving of a notice to produce does not in the least excuse the introduction or allowance of immaterial, irrelevant, incompetent, or impertinent evidence. We think this rule was overlooked throughout.

[6] Another error, and a somewhat far-reaching one in bankruptcy, was committed in respect of the examination of the claimant by opposing counsel. The trustee accepted the burden of producing evidence under the Dresser Case, and called as his first witness the claimant himself.

Considering that the transactions out of which this claim arose occurred at divers places between Great Britain and Eastern Siberia, and that none of the officers of the Russian company were apparently available as witnesses, we think counsel for the trustee was entirely within the circumstances of his case when he described Friedman as "the only person that knows of the transaction referred to in his proof of debt." Yet upon the ground that it was incumbent upon the trustee, first, to "cast a doubt upon the validity of his claim," the examination of Friedman was so hampered that he was in the main protected from either producing or admitting that he could not produce documents, which commercially certainly had existed, which he ought to have received and known about, and which were essential for accurately establishing, if not the existence, at least the quantum, of any claim. Whitney v. Dresser, supra, lays down no such rule. It was the right of the trustee to call Friedman, like any other witness;

he took the risk (whatever it may be nowadays) of making him his own witness, and had the right to elicit from Friedman any relevant matter tending to disprove the sworn proof of claim, in gross or in detail. The rule as applied below would permit a claimant to file a sworn proof, asserting that two and two make five, and would then protect such claimant from arithmetical cross-examination.

[7] In brief, the claim herein (in terms of local law) states a demand against the New York corporation for conversion of certain woolens valued at $750,000, and for the conversion, if not the embezzlement, of the proceeds of certain bags. There is total failure to prove damages with reasonable certainty, and no evidence of conversion.

The foregoing disposes of this matter, but we shall advert briefly to the trustee's plea asserting release. Friedman's whole claim is built upon the assertion that (almost in his own language) the Russian company went out of business and the New York company carried it on. It is shown by documents of the most formal character that in January, 1920, and thereafter, the Russian company was sufficiently in business to pay Friedman $10,000. This payment Friedman adverted to in his proof of claim, stating that he had received the same in 1921 from Wourgaft, president of the bankrupt corporation herein. This is a statement that he got it from the bankrupt itself. His own receipt and agreement shows that he got it from the Russian company.

Cotemporaneously with making the agreement under which he received $10,000 from the Russian company, Friedman wrote a formal letter to the bankrupt, in which (as we read the document) he expressly agreed that he would have "no claim of any character whatsoever against you (i. e., the bankrupt) as a result of or in connection with the above arrangements" (i. e., any arrangements made between the Russian and New York companies). This is scarcely a formal release, but it is the strongest evidence that, nearly two years after the formation of the New York company, Friedman was still doing business with the Russian company, and did not look upon the New York company as his debtor.

The order appealed from is reversed, and the matter remanded, with directions to expunge the claim.

There will be no costs.