After receipt of the opinion originally filed in these cases, a further argument was presented on behalf of the defendant, to change my mind on so much thereof as dealt with the invalidity of the attempted ratification of the contract with the Chase Securities Corporation. It was said on behalf of the defendant that there is a distinction between a contract made by a director with himself individually, as in the case of Gardner v.Butler, 30 N.J. Eq. 702, and a contract between two corporations having a common director or directors, and such seems to be the case, as would appear from the opinion of Vice-Chancellor Stevenson in Robotham v. Prudential InsuranceCo., 64 N.J. Eq. 673 (at pp. 709 et seq.) I was in error in deciding as a matter of law that any contract between corporations having a common director was voidable as a matter of right at the instance of any stockholder. That, however, was not the vice I had in mind or intended to cover. The vulnerableness of the defendant's position is that, while such a contract is not void, it is voidable by the stockholders by force of statute before amendment of the certificate of incorporation. Consequently, it became the duty of the company to give notice of all material facts affecting the contract to each holder of stock, so that he might be informed of everything of which he had a right to know. The defendant maintains that a contract such as the one under discussion is good if found to be fair by the court, and then unassailable by any stockholder, while, for example, *Page 232 
on the contrary, it would be enjoined on the objection of a stockholder if ultra vires. But my difficulty with the situation is not that at all, but that the requisite notice of the objectionable feature, to wit, Tinker's adverse interest therein, was never communicated to any of the stockholders before their meeting was held.
In Robotham v. Prudential Insurance Co., supra; MetropolitanTelegraph and Telephone Co. v. Domestic Telegraph Co., 44 N.J. Eq. 568;United States Steel Corporation v. Hodge, 64 N.J. Eq. 807,
there was either actual notice extended to the stockholders or ratification after knowledge had been obtained. In the last-mentioned case Mr. Justice Magie, speaking for the court of errors and appeals, indicates some doubt as to the validity of a contract such as the one found in this case. But I think that there is nothing in it irreconcilable with the opinion in theRobotham Case — that is to say, that it is not adverse to the rule that such a contract is good if ratified after its execution. But it is said in the telephone case that the common director is disqualified because of his interest in the contract, the terms of which he undertook to fix. Of course, his action could be ratified by the stockholders. "To sustain his capacity to do this would be like permitting one to be a judge in his own case. Had the contract been executed or entered into without objection, it would no doubt have not been void, but, at the most, only voidable." In Marr v. Marr, 73 N.J. Eq. 643, the defendant, William A. Marr, reduced to judgment claims he held against the corporation of which he was a director, and, upon the execution sale thereunder, bid in property of the corporation for himself. From this opinion I am unable to see any such limitation upon the rationale of the cases such as Gardner v. Butler,30 N.J. Eq. 702, as is perceived by defendant's counsel. Marr was decreed by the court of errors and appeals to be a trustee for his company and to hold its property as such. Chancellor Pitney points out for the court of errors and appeals that a director is not obliged to forego a just debt against the company he represents, but makes it very clear that before assuming an antagonistic *Page 233 
attitude he must openly and unequivocally "relinquish his trustpro hac vice, not covertly, but openly and with fair notice to his company." This requires something more than mere abstention from voting, if Mr. Justice Dixon's language meant anything, inStewart v. Lehigh Valley Railroad Co., 38 N.J. Law 505.
It would seem but necessary without argument to declare that any adverse interest in a proposed corporate proceeding by one of the directors should be communicated to the stockholders, where the latter are asked to ratify the same. Any other rule would permit the most ruthless destruction of the rights of the stockholders. Adroit management could frequently prepare a scheme in such innocent guise that ordinary stockholders would not be put upon their guard unless the full discharge of their duties by directors or officers presented the objectionable information which might cause individual stockholders to more carefully scan the proposed plan and seek competent advice thereon. Futhermore, if the law is to remain a scientific co-ordinated body of principles, doctrines and rules, there is no reason that fiduciary agents, such as directors, should not be subjected to the underlying directions of the law pertaining to trustees, which they are sub modo, as pointed out in the cases already mentioned. There is no rule better established than that "a trustee is bound to communicate to his beneficiary any knowledge or information he may have obtained affecting the beneficiary's interests, so far as they are embraced in or depend upon the trust or confidential relations. Pom. Eq. Jur. § 1077. In the previous opinion it would seem that the position herein assumed was made clear from the citations taken from Mr. Justice Van Syckel's opinion in the Hodge Case. He was not given to ruminating, in his opinions, on academic questions, and it would seem impossible to read what he there said as to contracts made by a trustee without the knowledge or consent of the cestui quetrust and its subsequent ratification without concluding that individual stockholders may defeat a plan submitted for confirmation, as the one under consideration. Ratification is impossible in the absence of *Page 234 
notice or knowledge. Western National Bank v. Armstrong,152 U.S. 346. Mr. Justice Van Syckel, in the Hodge Case, meant something when he said:
"The rule that directors cannot lawfully enter into a contract, in the benefit of which even one of their number participates, without the knowledge and consent of the stockholders, is so firmly entrenched in our jurisprudence that it is not open to debate." (The italics are mine.)
While the language does not indicate that a contract between corporations having a common director is void, it certainly must mean exactly what the clear intent of the language indicates. He says that the presence of a single common director who participates in the benefit of the contract makes necessary the acquaintance of the stockholders with that fact when ratification of the latter body is sought and required. This was not a voluntary expression of the judge's individual opinion; the language was written in deciding one of the questions presented to the court for decision. It must follow, clearly, from his language that "the rule that directors cannot lawfully enter into a contract" renders the same unenforceable over the objection of the stockholders, and the subsequent language makes it just as certain that no pretended or attempted confirmation of the irregular action is effectual where the knowledge with which he is dealing is withheld from the stockholders. Such withholding amounts to constructive fraud where the parties stand in a relation of confidence and trust, the one to the other, irrespective of actual fraud or any conscious effort at suppression. Pom. Eq. Jur., supra. Returning to the opinion in the Hodge Case, it was shown that the fullest and most honest expression of the personal interest of some of the directors was made to the stockholders prior to the meeting. Why? Certainly, not because it was an unnecessary act upon the part of the officers gratuitously made. Men do not go outside of their legal duties to raise obstacles in the way of their own plans. The giving of the notice was commented upon to show that without it the rules of law previously adduced would have defeated the desires of the company. *Page 235 
Again, I say, that while the presence of the common director does not render the contract with the Chase Securities Corporation void, nevertheless, the concealing of that fact from the stockholders, whether honestly or not, renders ineffectual as against a single protesting shareholder any vote that might be taken upon a certification to a stockholders' meeting. No one can say in advance what the effect would have been upon the sentiment of any stockholder had he known all that he was entitled to know. It may be that if a second meeting is held, under the terms that will be proposed, the result may be even more gratifying to the managers of the corporation. But, on the other hand, many of those entitled to vote may change their mind, and this they are entitled to do, and no one is legally authorized to take this discretionary power from them.
It was further urged that sufficient notice of Mr. Tinker's dual interest was exhibited to the stockholders at the time of the meeting, and that it was their duty to be present. But it appears to me self-evident that such notice, considered by the company of sufficient importance to be communicated at the meeting, comes then too late. The shareholder has a right at the time his proxy is sought by the corporate officers to rely upon their fairness and the discharge of their confidential duties, and that the unwary public should not be held to the consequences of an act secured by constructive fraud. Neither am I impressed with the argument that constructive notice was contained in the president's letter, to the effect that arrangements had been made with a large banking corporation for securing one-half of the preferred stock to be retired. Gardner v. Butler, supra, andKnoop v. Bohmrich, 49 N.J. Eq. 82, are not authorities for any such position as the defendant assumes, and it would be a strange proceeding if the legislature, by the seventeenth section of the General Corporation act were to extend to the stockholders the opportunity to vote by proxy with one hand and with the other behind its back clothe their trustees with the opportunity to betray their trust, without judicial redress for the former. A more inequitable action could not be conceived, and will *Page 236 
not be assumed to exist, by one branch of the government against another.
Finally, it is said that bills such as those under consideration are for the benefit of the corporation and will not lie at the suit of a stockholder. Counsel, however, very frankly and fairly admitted that it would have been a futile thing for the complainants or any other stockholders to have sought permission from the directors to have filed these bills in the corporation's name. Appleton v. American Malting Co., 65 N.J. Eq. 375.
I consider the contract with the Chase Securities Corpoation to be such an integral part of the entire scheme proposed by the directors as to be inseparable, and, for reasons I have attempted to explain, the entire matter should remain as it stands. To accede to the request that the defendant or is agents should be permitted to still vote the original proxies unless withdrawn by the stockholders after notice, would permit the defendant to profit by its own wrong. Equitably, it should be compelled to retrace its steps, to the point where the wrong was committed, and, after proceeding to right the same by giving the necessary notice and again securing proxies wherever possible, proceed to the meeting upon fair terms with the investors. However, in order that the matter may be brought to a head, I will direct that, if it so pleases, the company may proceed in accordance with the option expressed in the previous opinion, provided notice be mailed to the stockholders on or before January 28th, 1925, or else apply, upon two days' notice, to be heard on the fixing of terms, when I will hear arguments. Otherwise, I will advise temporary injunctions, in accordance with my previous opinion, upon amendment, if necessary, of the bill filed by Joel and others, which may be done upon like notice or upon the hearing under any such notice given by the defendant as above provided for.
Application for any order or decree must be upon notice, when appropriate action will be taken with regard to preserving the subject-matter pending appeal. *Page 237