**UNITED HOTELS CO. OF AMERICA, Inc., v. MEALEY et al.**

**No. 259.**

Circuit Court of Appeals, Second Circuit.

March 1, 1945.

M. Harold Dwyer, of Syracuse, N. Y. (Costello, Cooney & Fearon, of Syracuse, N. Y., on the brief), for appellant.

George J. Hatt, 2d, of Albany, N. Y., for Trustee, appellee.

Before EVANS, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

On August 1, 1942, United Hotels Company of America, Inc., made a contract with Albany Hotel Corporation for management of the Ten Eyck Hotel in Albany for 10 years at $6,000 a year, payable $500 each month. The contract was duly performed until Albany filed a petition for reorganization, March 20, 1943. It was then rejected pursuant to the provisions of a plan of reorganization approved by the court June 13, 1944, 11 U.S.C.A. § 596. On application of the trustee, representing that the claim was unliquidated and should be liquidated promptly, the court ordered a hearing upon it. At the hearing the trustee objected to allowance of the claim on the ground that it was unconscionable, being made by corporations with interlocking directorates who knew definitely of the embarrassed financial condition of the debtor. After taking evidence, the court sustained the objection in an opinion which relied largely upon Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281. This appeal is taken from the resulting order of disallowance.

■ Appellant first claims prejudice because the trustee did not file objections to its claim, relying on local district court rules to the effect that every claim for which proof of claim has been filed shall be deemed allowed until objections to its allowance have been presented. But the administrative convenience subserved by such rules certainly does not require or imply formal adversary pleading by objectors to the extent of changing the burden of pleading, and proof, contrary to the express requirement for the liquidation of unliquidated claims in ordinary bankruptcy, 11 U.S.C.A. § 93, sub. d; cf. In re Youroveta Home & Foreign Trade Co., 2 Cir., 297 F. 723, 725; In re Annin & Co., 2 Cir., 95 F.2d 381, 383, or the implication of the more general provision in Chapter X, 11 U.S.C.A. § 596. The application of the trustee for liquidation—of which appellant had full notice—put the latter on warning that it must prove its claim. Moreover, appellant appeared, and after some preliminary objections as to the order of proof proceeded to go forward with its evidence. True, at the end of the considerable hearing, after some colloquy as to the time of filing briefs and the court's expression of willingness to consider a request for adjournment to present further evidence, appellant asked for a week's adjournment "to find out whether we have any evidence on that proposition." Under the circumstances the court quite naturally said, "I won't give you a week to find out whether you have evidence on this proposition which is so narrow. Is that your only request?" to which the answer was, "As to adjournment, yes." Then the court gave a week for briefs and did not render its decision for six weeks. The hearing was clearly fair and as complete as appellant then thought desirable.

Appellant next asserts that the court's findings were contrary to the evidence. The court found that the contract in question was adopted at a meeting of the board of directors of the debtor, attended by three out of five directors, all of whom were also directors and stockholders of appellant, and thus financially benefited by the contract. And they created this long-term obligation in favor of appellant, while fully cognizant of the fact that since 1931 the hotel had been operated at a loss ranging from a "low" of $27,000 to a "high" of $94,000. Creditors' interests were involved. The debtor's "First Mortgage 5% Bonds" had been past due since May 1, 1939, and its "General Mortgage 6% Bonds" since July 1, 1941; while its "First and Refunding 5% Mortgage Bonds," which by their terms are not due until January 1, 1946, had been rendered past due by default in payment of interest and taxes. There can be little doubt as to the directors' knowledge that creditors' interests would be jeopardized by the new management contract. For it appears further from the court's findings that on May 1, 1941, the debtor had sent out a plan to the bondholders for "a modification of the interest charges and an extension of the maturities of the several mortgages securing its bonds," and that this plan was sent out to avoid "costly reorganization proceedings in the courts."

■ Pepper v. Litton, supra, holds that directors are fiduciaries in relation to both stockholders and creditors, and that a contract executed by them which is not in good faith or turns out to be unfair with respect to any of those interested in the corporation constitutes a breach of this

fiduciary obligation and may be set aside by the bankruptcy court. These principles have added force in the present case because of the applicable New York law, which has always subjected to careful scrutiny contracts made by directors having a personal interest, or between corporations with interlocking directorates. Burden v. Burden, 159 N.Y. 287, 307, 54 N. E. 17; Munson v. Syracuse, G. & C. R. Co., 103 N.Y. 58, 73, 8 N.E. 355; New York Cent. Ins. Co. v. National Protection Ins. Co., 14 N.Y. 85, 91. They therefore require disallowance of this claim if the District Court's findings are justified.

■ Appellant challenges directly only the finding as to the corporation's losses since 1931, contending that this is based on the trustee's report, which has been seriously disputed upon an appeal from the court's determination of insolvency. This appeal has now been decided, and our colleagues have experienced no difficulty in finding the debtor insolvent. Dudley v. Mealey, 2 Cir., 147 F.2d 268. Moreover, even if we disregard these losses, the large outstanding obligations to creditors, the directors' obvious awareness of the debtor's poor financial position, shown by their consideration of the necessity of a corporate reorganization, and their financial interest in appellant—all constitute sufficient evidence to support the District Court's holding. The facts further urged by appellant that it rendered important and indispensable services to the hotel and that up to the time when the trustee was appointed it actually performed the contract fail to overcome the contrary inferences from the remaining evidence. After all, appellant has the burden of proving good faith and fairness. Cf. Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 599, 41 S.Ct. 209, 65 L.Ed. 425; Pepper v. Litton, supra. A preponderance of the evidence, not mere incidental circumstances, must indicate that these standards were met.

■ Appellant next contends that the issue of the directors' breach of their fiduciary obligation was met by the fact that the contract was expressly made subject to the approval of an independent director, Rooney. Rooney was not at the meeting, but was then elected to fill a vacancy. He had no direct interest in appellant, and was at the time acting as attorney for First Trust Company of Albany, holder of the third mortgage on the hotel property. This claim is obviously without merit. Rooney could not have bound the debtor without the other directors, and it was their initiative and approval which constituted an essential part of the transaction. It is their fiduciary obligation which the District Court properly scrutinized.

■ Appellant further urges that the court failed to give sufficient weight to the ratification of the contract by the stockholders. This ratification took place at a special meeting of the stockholders in August, 1942, held, as were all these meetings, at Niagara Falls, where appellant was located. The notice of the meeting stated, as matters for consideration, reclassification of and authorization to issue additional capital stock and the indemnification of directors for expenses, in defense of suits against them as directors, with the usual addition of "such further and other business as may be properly brought before the meeting." But this is not sufficient to permit the consideration at a special meeting of other business so important as the ratification of the long-term management contract here involved. See United Gold & Platinum Mines Co. v. Smith, 44 Misc. 567, 90 N.Y.S. 199; and cases cited in 5 Fletcher, Cyclopedia of the Law of Private Corporations, 1931, 49, n. 45. Compare also Securities and Exchange Commission v. Okin, 2 Cir., 132 F.2d 784; Id., 2 Cir., 137 F.2d 862; Id., 2 Cir., 139 F.2d 87. A large number of the votes cast at the meeting were by proxies obtained on the basis of this notice and in fact repeating its substantive provisions in stating the extent of the authority granted. It seems to us a sound rule that, when a contract between corporations having interlocking directorates is presented to a meeting of stockholders, notice of the contract and the circumstances should be given at the time when the proxies are sought, in order to apprise the stockholders of the pertinent facts; and it has been so held. General Inv. Co. v. American Hide & Leather Co., 97 N.J. Eq. 230, 127 A. 659. The resolution of ratification, therefore, is not binding on these stockholders. Moreover, ratification by stockholders cannot render fair what is unfair to general creditors, for they, too, constitute a part of that community of interest in the corporation which the law seeks to protect. McCandless v. Furlaud, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121; Pepper v. Litton, supra.

820

To support its final contention of estoppel appellant argues that First Trust Company is the only creditor affected by the plan of reorganization, that it is also a stockholder of the debtor, and that it was represented by proxy at the meeting ratifying the contract in question, and may therefore not be heard to object to the allowance of the claim. It appears to be the fact that the only creditors not paid in full under the plan are the holders of the "General Mortgage 6% Bonds," for which First Trust was the trustee, and of the "7% Gold Bonds," owned by First Trust. But what we have just said as to ratification by proxy also disposes of the argument of estoppel. It is unreasonable to hold First Trust estopped when it is not shown to have had any real notice that the contract in question would be considered at the meeting for which the proxies were obtained. General Inv. Co. v. American Hide & Leather Co., supra. Moreover, holders of the 6% bonds, who are clearly creditors affected by the plan, would not be estopped even had the ratification been otherwise effective. The action of an indenture trustee in its capacity as a stockholder does not estop the bondholders it represents. Raht v. Attrill, 106 N.Y. 423, 13 N.E. 282, 60 Am.Rep. 456.

Finally, it is the debtor's trustee, acting in behalf of all the creditors, and not only those affected by the plan, who sought the disallowance of the claim in question. The setting aside of the contract was part of the plan of reorganization, upon which depended the favorable treatment of creditors thus relied upon. Had the contract not been set aside, the plan quite obviously must have been different; and very probably other creditors, too, would have found themselves not paid in full. As a matter of fact, approval of the plan has already been reversed for further proceedings in Dudley v. Mealey, supra, and the outcome is now thoroughly in doubt. This but emphasizes the more that the trustee should be always regarded as the representative of all the creditors, not merely those affected by a particular plan. Possible estoppels against the latter, therefore, should not be extended to bar him in his fiduciary capacity. See H. R. Rep. No. 1409, 75th Cong., 1st Sess., 1937, 44; 3 Collier on Bankruptcy, 14th Ed. 1941, 225; 4 Collier on Bankruptcy, 14th Ed. 1942, 950; Central Hanover Bank & Trust Co. v. President and Directors of Manhattan Co., 2 Cir., 105 F.2d 130; Bankr. Act, §§ 186, 60, 67, sub. a, 70, sub. c, 11 U.S.C.A. §§ 586, 96, 107, sub. a, 110, sub. c.

Affirmed.